## Wytheville.

### BROWN v. THOMAS.

June 14, 1917.

Absent, Burks, J.

1. BILLS AND NOTES—*Filling Blanks—Rule at Common Law.*—The rule at common law was that, if, at the time an incomplete instrument was negotiated to a holder for value, the latter was without notice of any limitation upon the authority to complete the instrument, other than was given by the incomplete instrument itself, the person who signed the incomplete instrument, either as maker or indorser, and delivered it, in order that it might be converted into a negotiable instrument, was not allowed thereafter to defend an action against him on the instrument, upon the ground that the blanks were not filled up in accordance with the authority he may have given to the person into whose hands he delivered the incomplete instrument. That is to say, in such case, the authority in any holder for value of such an instrument, to complete it, was absolute.

2. BILLS AND NOTES—*Filling Blanks—Authority to Fill Prima Facie or Absolute.*—At common law before an incomplete instrument was negotiated to a holder for value—before the consideration for the note passed—the authority to complete it was *prima facie* only. But after this occurrence in its history, the authority to complete the note became, at common law, absolute. The statute in Virginia (negotiable instruments law, subsection 14, section 2841-a, Code 1904) makes the authority under consideration *prima facie* only, after, as well as before, the occurrence next above referred to. It allows, at the trial, in a case such as first above stated, the defense that the blanks were not filled up in accordance with the authority given to the person into whose hands the incomplete instrument was delivered. This was a very important change in the common law on this subject and very far-reaching in its effect.

3. BILLS AND NOTES—*Filling Blanks—Authority to Fill—Case at Bar.*—In the instant case, the defendant—the person who signed and delivered the incomplete instrument, in order that

it might be converted into a negotiable instrument —introduced no evidence, nor was there any in the case, to rebut the *prima facie* authority of the plaintiff, the holder for value, to complete the instrument given by the statute. Hence in the instant case, such authority is the same in effect as if it had been absolute, as at common law.

4. BILLS AND NOTES—*Filling Blanks—Time Within Which Blanks Must Be Filled.*—Both at common law and by virtue of the express provisions of the statute in Virginia, the blanks in an incomplete negotiable instrument must be filled within a reasonable time in order to hold the maker or endorser.

5. BILLS AND NOTES—*Filling Blanks—Reasonable Time—Questions of Law and Fact.*—What is a reasonable time in such a case is usually a question for the jury, when the facts are doubtful or disputed. But when the facts are clearly established, or undisputed, or admitted, the reasonable time is a question of law. The demurrer to evidence in the instant case avoids any controversy as to the facts. When the facts thus ascertained are such that reasonable minds could draw but one conclusion therefrom, it is for the court to draw that conclusion as a matter of law.

6. BILLS AND NOTES—*Filling Blanks—Reasonable Time—Case at Bar.*—A blank note was endorsed by defendant and delivered to his brother, who signed it and delivered to the plaintiff to secure the payment of any notes that plaintiff might subsequently endorse for defendant's brother. Upon the day after the death of the defendant's brother, insolvent, the plaintiff filled up the blanks and completed the note. As it was not until the brother's death that it could be determined that plaintiff might not be asked by him and consent to endorse other notes for him, the note could not have been completed before the brother's death, and have accomplished the purpose for which it was delivered to the plaintiff. It is clear, therefore, that in the instant case, the note was completed within a reasonable time.

Error to a judgment of the Circuit Court of Culpeper county, in an action of debt. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

This is an action of debt on a negotiable note.

The plaintiff in error was the plaintiff in the court below and the defendant in error was the defendant in the court below. They will be hereinafter referred to as plaintiff and defendant.

There was a demurrer to evidence by the defendant in the trial court; a verdict of a jury in favor of the defendant, subject to such demurrer; and, upon such demurrer, a judgment of the court in favor of the defendant in accordance with the verdict of the jury.

Considering the evidence under the rule applicable in such cases the material facts are as follows:

FACTS.

The defendant, on or about October 10, 1913, endorsed his name on the back of a printed form of the negotiable note sued on, the face of the note being then in blank, except the printed matter thereon—that is to say, the provisions of the note as to the date, amount, to whom and when payable, were left blank by the defendant. Having signed his name on the back of such incomplete instrument the defendant on or about said date, October 10, 1913, delivered it to his brother, W. A. Thomas. W. A. Thomas signed the note as maker and on October 10, 1913, delivered it to the plaintiff to be held by the latter as collateral security to indemnify and save him harmless against loss by reason of his endorsing a certain note of W. A. Thomas for $215.97 upon which W. A. Thomas then wished to borrow money by discounting it in bank, and also to indemnify and save harmless the plaintiff against loss by reason of his thereafter endorsing any other note or notes of W. A. Thomas upon which the last named might borrow money

in bank.   In consideration of such delivery to him of such
note, the plaintiff on October 10, 1913, endorsed the said
note of W. A. Thomas for $215.97, upon which the latter
borrowed money in bank.   From time to time the last
named note was renewed in bank for its principal amount,
the plaintiff continuing to endorse the renewals.   On July
10, 1915, the plaintiff endorsed an additional note of W. A.
Thomas for $95.00 at 60 days, upon which the latter bor-
rowed further money in bank.   On August 28, 1915, W.
A. Thomas died insolvent.   His two notes aforesaid then
in bank, bearing the endorsement of the plaintiff, amounted
to $320.62.   Thereupon, the plaintiff, on August 29, 1915,
considering the loss "to have come to him on account of
his endorsement of said notes of W. A. Thomas," filled up
said note sued on with the amount of $320.26, the plain-
tiff's name as payee, and "on demand" as to time of pay-
ment.   The date "Oct. 10, 1913," had already been filled
up by the plaintiff.   The latter was inserted by the plain-
tiff when the note sued on was delivered to him as afore-
said.

The plaintiff testified that neither at the time he took
the note sued on nor thereafter did he know- anything of
any arrangement or understanding between the defendant
and W. A. Thomas placing any limitation upon the author-
ity to complete the instrument and that he, the plaintiff,
endorsed the said notes of W. A. Thomas aforesaid on
which the latter borrowed money in bank and on which
the plaintiff was bound, and which he would have to pay,
upon the faith and credit of the note sued on, endorsed by
defendant and delivered to the plaintiff as aforesaid; and
that he would not have endorsed the said notes of W. A.
Thomas unless the note sued on had been delivered to him
as collateral security.

The statute in Virginia on the subject is contained in

the negotiable instrument law, sub-section 14, sec. 2841-a, Pollard's Code 1904, and is as follows:

"Where the instrument is wanting in any material particular the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument after completion is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

*Hiden & Bickers*, for the plaintiff in error.

*Grimsley & Miller*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

Upon the assignment of error in this case only two questions are presented for our determination, namely:

1. Did the plaintiff have the authority to complete the note sued on by filling up the blanks therein as he did?

2. Were the blanks in the note sued on filled up "within a reasonable time"?

The rule at common law was that, if, at the time an incomplete instrument was negotiated to a holder for value, the latter was without notice of any limitation upon the authority to complete the instrument, other than was given

by the incomplete instrument itself, the person who signed the incomplete instrument, either as maker or indorser, and delivered it, in order that it might be converted into a negotiable instrument, was not allowed thereafter to defend an action against him on the instrument, upon the ground that the blanks were not filled up in accordance with the authority he may have given to the person into whose hands he delivered the incomplete instrument. That is to say, in such case, the authority in any holder for value of such an instrument, to complete it, was *absolute*—could not be rebutted by proof for defendant on the trial that the instrument was not filled up strictly in accordance with such authority as the defendant may have given on the subject *dehors* the instrument itself and unknown to the holder for value at the time he negotiated the instrument. *Russell* v. *Langstaff*, (Opinion by Lord Mansfield), 2 Douglas 514; *Violett* v. *Patton*, (Opinion by Chief Justice Marshall), 5 Cranch (U. S.) 142, 3 L. Ed. 61; *Chestnut* v. *Chestnut*, 164 Va. 541, 52 S. E. 348, 2 L. R. A. (N. S.) 879, 7 Ann. Cas. 802; *Frank* v. *Lilienfeld, &c.*, 33 Grat. (74 Va.) 377-83; *Orrick* v. *Colston*, 7 Grat. (48 Va.) 189; *Jordan* v. *Neilson*, 2 Wash. (Va.) 164; *Douglas* v. *Scott & Foy*, 8 Leigh (35 Va.) 43; *Boyd* v. *McCann*, 10 Md. 118; *Eliott* v. *Chestnut*, 30 Md. 562; *Redlich* v. *Doll*, 54 N. Y. 234, 13 Am. Rep. 573; 1 Daniel on Neg. Inst. (2nd ed.), pp. 121-2.

It is true that at common law before an incomplete instrument was negotiated to a holder for value—before the consideration for the note passed—the authority to complete it was *prima facie* only. But *after* this occurrence in its history, the authority to complete the note became, at common law, absolute.

The statute in Virginia, (above quoted) makes the authority under consideration *prima facie* only, *after, as well as before,* the occurrence next above referred to. It allows, at the trial, in a case such as first above stated, the defense that the blanks were not filled up in accordance

with the authority given to the person into whose hands the incomplete instrument was delivered. This was a very important change in the common law on this subject and very far reaching in its effect, but it does not affect the case before us. In the instant case, the defendant—the person who signed and delivered the incomplete instrument, in order that it might be converted into a negotiable instrument—introduced no evidence, nor was there any in the case, to rebut the *prima facie* authority of the plaintiff to complete the instrument given by the statute. Hence in the instant case, such authority is the same in effect as if it had been absolute, as at common law.

Therefore,

The first question we have to determine must be answered in the affirmative; and our conclusion is that the plaintiff had at one time the authority to complete the note sued on as he did.

But counsel for defendant contend that the plaintiff lost the authority to complete the note sued on by his failure to do so within a reasonable time. This brings us to the remaining question we have to consider, namely:

2. Were the blanks in the notes sued on filled up "within a reasonable time"?

Both at common law (7 Cyc. p. 622) and by virtue of the express provisions of said statute in Virginia, the blanks in an incomplete negotiable instrument must be filled "within a reasonable time" in order that the person in the position of the defendant in the instant case may be held bound thereon.

It has been held that the burden of proof under the negotiable instrument law, is upon the plaintiff—the subsequent holder of the note for value—to show that the instrument was completed within a reasonable time. (*Madden* v. *Gaston*, 137 App. Div. 294, 121 N. Y. Supp. 952). It is unnecessary, however, for us to pass on such question in the case before us.

97

What is a reasonable time in such a case is usually a question for the jury (7 Cyc. p. 622). As when the facts are doubtful or disputed. (*Hill* v. *Hobart*, 16 Me. 164). But "when the facts are clearly established, or undisputed, or admitted, the reasonable time is a question of law." (*Idem.*)

The demurrer to evidence in the instant case avoids any controversy as to the facts. When the facts thus ascertained are such that reasonable minds could draw but one conclusion therefrom, it is for the court to draw that conclusion as a matter of law. (*Recker* v. *Southern R. Co.*, 115 Va. 201, 78 S. E. 580.)

Upon the facts of the case, ascertained upon the demurrer to evidence, the purpose for which the note sued on was delivered to the plaintiff was to secure and save him harmless from loss by reason of his becoming bound to pay any subsequent note he might endorse for W. A. Thomas, as well as the note he endorsed for him on October 10, 1913. The plaintiff in fact subsequently endorsed another such note, on July 10, 1915. W. A. Thomas died one month and nineteen days thereafter. It was not until his death that it could be determined that plaintiff might not be asked by him and consent to endorse other notes for him. The next day after such death, the blanks were filled up by plaintiff and the note completed. It could not have been completed before the death of W. A. Thomas, and have accomplished the purpose for which it was delivered to the plaintiff. It is clear, therefore, that in the instant case, the note was completed within a reasonable time.

For the foregoing reasons we are of opinion that the trial court should have overruled the demurrer to evidence and entered judgment for the plaintiff. The judgment complained of will therefore be reversed and such judgment will be entered by us as should have been entered by the court below.

*Reversed.*