RUBEL DRY GOODS COMPANY v. ALEX MITCHELL et al.

Western Section.   July 1, 1927.

No petition for Certiorari was filed.

1. **Bills and notes.  Under Section 14 of the Negotiable Instruments Act a holder who receives a note not complete on its face is not a holder in due course.**

    In an action to recover on a note where it appeared that when the note was turned over to the holder, and complainant the payee, the amount and the date were not filled in, held that under Section 14 of the Negotiable Instruments Act the complainant was not a holder in due course.

2. **Bills and notes.  One in possession of an incompleted instrument may fill in the blanks in accordance with authority given him.**

    The weight of authority is to the effect that one in possession of an incomplete note may fill in the blanks in accordance with the authority given to the person into whose hands the incomplete instrument is delivered.

3. **Bills and notes.  Where blank note is filled in in violation of authority and then negotiated, an innocent purchaser may recover the amount of the note from the maker.**

    Where one signs a negotiable note with the space for the amount left blank the payee prima facie has authority to complete it in a reasonable time by filling in the amount authorized and if he fills in any other sum than the one authorized he cannot hold anyone who became a party before it was completed.  If, however, after it is completed it is negotiated to a holder in due course such holder can recover regardless of whether the amount was authorized.

4. **Bills and notes.  Evidence.  Evidence held to show complainant not entitled to recover on incompleted note.**

    Where the evidence showed that a debtor of the complainant took a blank note and secured the signature of the several defendants stating that the note was to be filled in for a sum less than it was actually filled in for, and then mailed the note to complainant authorizing him to fill in the amount of his debt, held that the complainant received an incompleted instrument and could not hold the makers who had signed the note on condition that it was to be filled in for a smaller amount.

Appeal from Chancery Court, of Obion County; Hon. V. H. Holmes, Chancellor.

Reversed and suit dismissed.

F. J. Smith, of Union City, for appellants.

Fenner Heathcock, of Union City, and Bradshaw & McDonald, of Paducah, Ky., for appellee.

SENTER, J.   The facts necessary to be noticed may be summarized as follows: Alex Mitchell was engaged in the retail mercantile business in Obion county, Tennessee, and became indebted for account of merchandise sold and delivered by complainant, engaged in the wholesale

dry goods business in the city of Paducah, Ky. This account amounted to $2,099.95. Complainant was insisting upon a settlement of the account. Mitchell went to Paducah and after a conference with complainant proposed to give a note with good sureties thereon to cover the account. This was agreed to by complainant, and a note for the sum of $2,099.95 dated September 7, 1922, and due November 20, 1922, payable to complainant, was drawn up by complainant and given to Mitchell for him to have the sureties sign and to be in due course returned to complainant. It also appears that at the same time the complainant gave to Mitchell two or three blank notes with complainant as the payee in the blank form. Mitchell returned to his home in Obion county and procured P. R. Greer, Thurmon Tankesley, W. E. Albright, G. W. Ashworth and S. B. Ross to sign the note with him. It appears that he approached each of these signers separately, and the note which he showed to them respectively and induced them to sign was one of the blank forms and not the complete note. He represented to Greer that the note would be filled out for the sum of $650 and that the other parties named would sign the same, and Greer signed the note already signed by Mitchell with the understanding that it would be filled out for $650 and that the other persons named would also sign the note. To W. E. Albright, Mitchell represented that the note would be filled out for $750 with the other persons also signing the note and W. E. Albright signed the note with that understanding. Mitchell represented to Thurmon Tankesley that the note would be filled out for the sum of $850 with the other persons to become signers. He represented to S. B. Ross and to G. W. Ashworth, respectively, that the note would be for $750 and that the other persons named would sign the same and both Ross and Ashworth signed the note with that understanding. This note with the due date left blank and the amount of the same left blank when signed by the parties named, was sent by Mitchell by mail to complainant with instructions to fill it out for the amount of the account. It does not appear from the record what became of the note originally made up and turned over to Mitchell by complainant which stated the amount to be $2,099.95. When complainant received the note it was in this incomplete condition, and complainant filled out the blank spaces by writing in the due date and the amount of the note, the same being for the sum of $2,099.95. After the note became due complainant demanded payment of the note of the several signers and upon their failure to pay the note complainant filed a bill in this cause against Mitchell and the other signers seeking to recover the amount of the note, the accrued interest thereon and the attorney's fees as provided in the note. Prior to the filing of the bill, Mitchell received a discharge in bankruptcy, and the bill was dismissed as to Mitchell.

Each of the defendants, other than Mitchell, filed separate answers, each of the answers setting up by way of defense the facts as above stated, under which they signed the note, and their respective understandings and agreement with Mitchell that the note would be filled out for the respective amounts as above set forth. By stipulation of the solicitors for the respective parties filed with the record, it was agreed that the respective defendants would testify if their depositions were taken to the facts as set out by them respectively in their separate answers.

At the hearing of the cause the Chancellor set out a finding of the facts in his decree. The decree recites substantially as follows: First, that complainant is the owner of the note sued on; that it is past due and unpaid; that the aggregate amount of principal, interest and attorneys' fees to the date of the decree amounted to the sum of $2,075.83. Second, that said note was not complete on its face when delivered by Mitchell to the payee, who was the complainant in the cause, but that the due date and the amount called for in the said note, were written into the face of said note by the payee, the complainant, after said note was received by it; but that this was done by consent of said Mitchell. Third, that each of the other defendants signed said note for the accommodation of said Mitchell.

To these conclusions and findings of the facts by the Chancellor, we agree. The Chancellor then proceeded to decree further as follows:

"It further appears from the proof and from the admissions of the answers of said defendants, other than Alex Mitchell, and it is so decreed, that the defendant P. R. Greer intended to become bound on said note for the principal sum of $650; that the defendant W. E. Albright intended to become bound on said note for the principal sum of $750; that defendant Thurmon Tankesley intended to become bound on said note for the principal sum of $850; that defendant S. B. Ross intended to become bound on said note for the principal sum of $750, and that the defendant E. W. Ashworth intended to become bound on said note for the sum of $750.

"It thereupon appears to the court, and is so adjudged and decreed, that complainant is not a holder in due course of said note; and is not entitled to enforce payment according to its tenor; but it appearing that the aggregate of the sums for which the said defendants, other than Alex Mitchell, severally agreed to become bound, exceeds the principal sum in the face of the note, it is thereupon ordered, adjudged and decreed that complainant have and recover of the said defendants, P. R. Greer, W. E. Albright, Thurmon Tankesley, S. B. Ross, and G. W. Ashworth, jointly, but not severally the principal of said note, $2,099.83, interest thereon to this date, the sum of $514.42, and

attorney's fees in the sum of $261.43, in the aggregate $2,875.80.

"And that of said whole amount the complainant have and recover of the said P. R. Greer, severally, principal, attorneys' fees and interest to this date, the sum of $890.11; and then have and recover of the said W. E. Albright, severally, the sum of $1,027 being principal and interest and attorneys' fees to this date; and have and recover of said Thurmon Tankesley interest and attorneys' fees to this date the sum of $1163.99; and of the defendant S. B. Ross, severally, principal, interest and attorneys' fees to this date, the sum of $1,027.63; and have and recover of the defendant G. W. Ashworth, severally, principal, attorneys' fees and interest to this date the sum of $958.50."

To this decree of the Chancellor the defendants, other than Mitchell, duly excepted and have perfected an appeal to this court. The questions of law presented by the five assignments of error, are that the Chancellor erred in not denying complainant any relief against the appellant defendants, and in not dismissing the bill, and in decreeing liability against the appellants, or either of them, because the note sued on was not complete on its face when delivered by Mitchell to complainant, in that no amount was stated in the face of the note, nor was the due date written into the face of the note, and the due date and the amount called for in said note were written into the note by the payee, complainant, after the note was received by it. And because the appellant defendants did not authorize the note to be filled in for the amount for which it was filled in, and because the note was filled in for an amount in excess of any amount that either of the appellant defendants agreed to become liable for, and that the complainant, the payee named in the note, was not a holder of the same in due course, and was unauthorized by the respective appellant defendants to fill in the amount of the note and its due date.

We think the Chancellor correctly held that complainant was not a holder in due course. The note was incomplete on its face when turned over to complainant by Mitchell.

Section 14 of the Uniform Negotiable Instruments Act is as follows:

"Section 14: Blanks. When may be filled.—Where the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks. And a signature on a blank paper by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima-facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the

authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all. purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

We do not find that section 14 of the Uniform Negotiable Instruments Act, involving the question we have here, has been before the Supreme Court of this state. However, section 13, and other provisions of the act, was before the Supreme Court and construed in the case of Holman v. Higgins, 134 Tenn., 387. In that case the suit was on a promissory note, and the defense by all the signers except Copeland, the first signer, was that there had been a material alteration of the instrument sued on after it was signed, that rendered it unenforceable. In that case it appeared that at the time the note was prepared by Copeland, who desired to raise money with which to enter business, the name of the payee was left blank, and the note bore date of July —, 1910. The note in this form was presented by Copeland to the son-in-law of Mrs. Holman, and who was acting for Mrs. Holman. She agreed to lend the money on the note after investigating the other signers. At the time the note was delivered to the son-in-law of Mrs. Holman, Copeland requested that the date of the note be made "September 1" instead of "July —," and the name of Mrs. Holman, the payee, written in the blank space for the payee. The change was made at the instance of Copeland, who desired to have the interest on the note to begin at the date the loan was actually made, and the change was made by the son-in-law of Mrs. Holman, and her name written into the blank space as payee, at the request and by the consent of Copeland. The court said in that case: "Strictly speaking, in such circumstances the filling of a blank is not an alteration of the instrument; the question involved is really one of consent and of authority in the lodgee of the note as agent. 2 Corp. J., pp. 1243-1245. And the court should not be disinclined to draw the inference of consent where, in view of apparent authority in such lodgee, a fraud upon an innocent payee or holder would otherwise result. One of the tests as to such authority by implication is whether the matter inserted causes the instrument as perfected to speak in accord with its intended purpose and use.

"Applying these principles, it is manifest, in our view, that the fair inference is that the defendants, by leaving the blank in the date line, consented that Copeland might, in his discretion, give the note the date of its actual delivery to whomsoever might become its payee, when it was to their evident advantage as payors, though in doing so there was involved the change of the word 'July' to the word September.' . . ."

Vol. V. T. A.—17.

In the case just referred to it was the understanding and intention of the parties signing the note with Copeland that it was to be used by Copeland to borrow the sum of money mentioned in the face of the note, but it was not known from whom he would obtain the loan, nor just when the note could be delivered, and, hence, the date July —— was written into the note, with the evident expectation that the note would be delivered to the person from whom the loan would be obtained on some day during the month of July. The fact that the loan was not obtained on the note until September, and the note dated September rather than July, was to the advantage of all the signers since the interest would not begin running until September, and had the date remained July it would have begun running from that date. The fact that no particular day in July was stated, and as to that item the note left blank, was clearly because the parties signing the note intended that Copeland would date the note as of the date of its actual delivery and the loan actually obtained.

In the recent work of Uniform Laws Annotated, Volume 5, numerous citations are given under section 14, of the Uniform Negotiable Instruments Act. From an examination of the cases therein collated, we think it clear that the weight of authority is to the effect that one in possession of an incomplete note may fill in the blanks in accordance with the authority given to the person into whose hands the incomplete instrument is delivered. Brown v. Thomas, 120 Va., 763, 92 S. E., 977; Business Mens League v. Sragow, 153 N. Y. S., 231. It is accordingly held that one who signs a negotiable note with the space for the amount left blank, the payee has authority, prima facie, to complete it, in a reasonable time, by filling in the amount authorized, and if he fills in any other sum he cannot hold the maker nor anyone else who became a party to it before it was completed. If, however, after its completion, it is negotiated to a holder in due course, the maker, or those becoming parties to it before its completion, can be held regardless of whether the amount was authorized. Exchange Bank v. Robinson, 185 Mo. App., 582, 172 S. W., 628.

In the case of Hammen v. Bank, 195 Ky., 58, 241 S. W., 355, it is held that where a note was filled in by an agent for an amount in excess of the authority conferred it may be shown against one not a holder in due course. In accordance with this view it was also held that where on the sale of goods the buyer's agent delivered to the seller a check duly signed, but with the amount left blank, with the direction that the seller should insert the value of the goods purchased, but the seller filled in the check for a larger amount so as to cover another debt which he claimed was owing from the buyer, he was liable for the excess so collected. Rogers v. Baker, 122 N. Y. S., 91. (No reference to Uniform Act).

RUBEL DRY GOODS CO. v. MITCHELL.        259

In the case of Vander Ploeg v. Van Zuuk, reported in L. R. A., 13 (N. S.) page 490, from the Supreme Court of Iowa, one Pothoven procured two others, one of whom was his partner in the mercantile business, to sign a blank note with him on the representation that he might, within a short time, find it necessary to raise $150 or $200 for temporary use in the business. Pothoven being indebted on his individual account to the plaintiff on a note for about $2,000, inserted plaintiff's name as payee, and $2,000 as the amount to be paid, and the rate of interest and delivered the instrument thus filled out by him without authority to the plaintiff, who thereupon surrendered to him the past due obligation. In that case it was said by the court: "We have, then, the simple case of a note wrongfully filled out and delivered by one of the makers to the payee, without notice to the payee that the instrument as delivered is not filled out in accordance with the authority given by the other makers to the one who thus fills it out and delivers it. With reference to the filling of blanks in an instrument after the affixing of his signature by the maker sought to be charged, the Negotiable Instruments Act contains the following section:" (then is quoted in the opinion the act and section 14 thereof, which appears to be in the exact language of the Tennessee Act) and the opinion then proceeds to state:

"It is apparent from the last sentence of this section, that if plaintiff is to be regarded as 'a holder in due course,' then the instrument is effectual in his hands for all purposes as though it had been filled up strictly in accordance with the authority given by the defendants to Pothoven, i. e., defendants would not be allowed to contend, as against the holder in due course, that Pothoven did not have authority to fill the instrument out for $2,000; but, under the sentence immediately preceding the last, if plaintiff is not to be treated as a holder in due course, then, as defendants became parties thereto prior to its completion, they are not liable to plaintiff because it was not filled up in accordance with the authority given. . . ."

It will be observed that the distinction, and the only distinction, in the case of Ploeg v. Van Zuuk, supra, and the case at bar, is that Pothoven. who procured the other two signers to sign the note under a representation that it would be for an amount of $150 or $200, filled in the note to the payee himself, while in the instant case Mitchell, who procured the appellant defendants to sign the note in this case, delivered it to the payee, complainant, and authorized the payee to fill it out for the sum largely in excess of the amount authorized by the respective signers.

In the Nebraska case of Harrington Nat. Bank v. Yiebelhaus, reported in 31 L. R. A. (N. S. page 130) is a case in which the defendant signed a promissory note perfect on its face, with the exception

of a blank for the name of the payee, and entrusted it to his co-maker, who delivered it in that form to a bank two days later, before it was due, in violation of an agreement that it should be used by him in buying a meat market; that the name of the seller should be inserted in the blank, and that the note should be returned to defendant if not used for that purpose. The bank accepted the note at its face value, and afterward inserted its own name in the blank as payee. It was held in that case that the instrument was not enforceable against the defendant within the meaning of that part of the Uniform Negotiable Instrument Law relating to the filling of blanks, and which act provided among other things, in the Nebraska Act, the following: ''In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given, and within a reasonable time.''

This is the same language used in section 14 of the Tennessee Act, and is a direct holding by the Supreme Court of Nebraska that the instrument could not be enforced against the defendant who signed the note with the understanding and agreement that it was to be used for the purchase of a meat market by the other signer, and was not so used but was used by the co-signer for his purposes when it was discounted to the bank, and the bank after receiving the same wrote its own name in the note as the payee, it being held that the bank was not a holder in due course. While it is no doubt the almost uniform holding, under the law merchant and at common law, that an innocent payee or person in whose hands the note first had its inception as a contract may recover under such circumstances, and the cases generally rest upon the ground of estoppel. However, we are of the opinion that under section 14 of the Uniform Negotiable Instruments Act, the decided weight of authority is to the effect that where a note is signed with the amount left blank, and the person procuring the signatures, represents that it shall be for a stated sum, and then delivers the note to the payee named in the note, and the payee by the consent of the principal maker writes in the amount of the note for a sum in excess of the amount which the signers had authorized, and the payee in such circumstances, not being a holder in due course, the instrument is not thus completed, and is not enforceable at the suit of the payee against such signers.

We think this case comes squarely within the provision of section 14, wherein it is provided: ''In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time.'' This instrument was clearly incomplete at the time

the respective appellants signed the same. It was not completed in accordance with the clear understanding and instructions given by these defendants, but was filled in for an amount largely in excess of the amount they had respectively authorized. The payee of the note was not a holder in due course. Under these circumstances we are constrained to reach the conclusion that the learned Chancellor was in error in holding that this instrument was enforceable against the appellants, or either of them, for any amount, and in decreeing judgments against them.

In this view of the case it becomes unnecessary to consider the form of the decree wherein a joint judgment is decreed against all the signers, except Mitchell, and a several judgment decreed against the respective defendants for the respective amounts set out in the decree.

It results that the decree of the Chancellor is reversed and the bill dismissed. The complainant and surety on the appeal bond will pay the cost of the cause and of this appeal.

Owen and Heiskell, JJ., concur.