The sole question brought up by this appeal concerns the allowance by the orphans court of Monmouth county of a claim of the accountant against the decedent's estate for $50,000 based upon a note of decedent signed by him in blank and delivered to her some months before his death, and filled out for $50,000 some months after his death. The circumstances giving rise to this transaction are as follows:
The decedent and the accountant were married in Italy about 1887 or 1888 and came to this country about that time. Neither could then speak, read or write the English language. The accountant speaks and understands the English *Page 50 
language now imperfectly but can neither read nor write it. The decedent died in October, 1925, and had then learned to speak the English language, but not to read or write it, although he could sign his name. Immediately after their arrival in this country the decedent acquired a fruit stand on Cortlandt street in New York City, which he conducted for two or three years, and the accountant obtained a position in a candy factory on Chambers street, where she worked until both decedent and accountant came to Monmouth county in the early nineties. The accountant then opened a candy store in Red Bank, New Jersey, and the decedent opened a candy shop in Asbury Park. The accountant conducted her store in Red Bank for about two years and then sold it and went to Asbury Park to her husband and with him conducted a candy store there and continued in his various businesses with him thereafter. The proceeds of the sale of the Red Bank candy shop were invested in lots in Asbury Park by the accountant, these lots sold, other property bought, a house built, which was later sold, and various other real estate transactions were had and finally the proceeds of the sale of the accountant's properties were turned over to the decedent who used them in his business and eventually invested them, with other moneys of the accountant which she had given him from time to time, and with moneys of his own, in a property in Asbury Park which, since the decedent's death, has been sold for $40,000 subject to encumbrances the amount of which does not appear in the record. The accountant never had a bank account and it appears conclusively from the evidence submitted in the orphans court that the funds of both the accountant and the decedent were kept in common, used in common, and that it was understood between them that each should have a one-half interest in whatever property either or both owned. The title to the property which was sold after the death of the decedent as above stated was in his name. This fact was not known to the accountant until a short time before his death when negotiations were had for a mortgage loan on that property. At that time some controversy arose between the parties respecting *Page 51 
the accountant's interest in the property, as a result of which the decedent stated that the property was owned "fifty-fifty," that he valued it at $100,000, and that he would give the accountant his note for $50,000 to evidence her interest in the property. He thereupon signed his name to the note here in question and handed it to the accountant in the presence of Mr. Pingatore, the proposed mortgagee, and directed the accountant to fill it out or have it filled out for $50,000 whenever she was pleased to do so, stating that his name was good any time. These are the facts found by the orphans court and are fully justified by the evidence as it appears in the record. All debts of the estate, except the note in question, have been paid, leaving a balance, after the payment of counsel fees and expenses, of approximately $11,000, which the accountant agreed to accept in satisfaction of her claim upon the note. The decree of the orphans court approved the account and directed the payment of this balance to the accountant in settlement of her claim. It is from this allowance, exception to which was taken, in the orphans court and overruled, that this appeal is taken.
There is no doubt that there was ample consideration for the note and the only question which, it seems to me, it is necessary to decide is whether or not the authority which the decedent gave the accountant to fill out the note in the sum of $50,000 continued and extended beyond the date of his death and until the note was actually filled out some six months later.
Under the provisions of the Uniform Negotiable Instruments act (3 Comp. Stat. p. 3736 § 14) the holder of a note has primafacie authority to complete it by filling up the blanks therein in strict accordance with the authority given and within areasonable time. This provision is merely declaratory of the common law. Brown v. Thomas, 120 Va. 763; 92 S.E. Rep. 977.
But the act is silent as to the effect of the death of the maker upon such authority. In 8 Corp. Jur. 189 tit. "Bills and Notes"
¶ 319, it is said that the blank cannot be filled up after the death of the party to be bound, citing Canal, c., Railroad Co.
v. Armstrong, 27 *Page 52 La. Ann. 433, and Michigan Insurance Co. v. Leavenworth,30 Vt. 11, "although it may be otherwise in the case of a blank acceptance coupled with an interest," citing Hatch v. Searles,2 Sm. G. 147; 65 Reprint 342. The Louisiana Case cited in support of the main proposition is not in point; what was said by the court respecting revocation of authority by death wasobiter and arguendo, and the case involved a contract of suretyship on a bond. The Vermont Case was decided in 1856, fifty-six years before the adoption of the Uniform Negotiable Instruments act by that state, and holds that death revokes authority. But that case involved the liability of the estate of an accommodation endorser and not that of the maker of the note in question, and the decision was based upon the principle that such an endorsement, by its very nature, was countermandable. The authority conferred by the endorsement, until exercised, and consequently the resultant liability, was voidable by the endorser at his pleasure. But, obviously that reasoning does not apply to the liability of the maker of a note based upon a valuable consideration. Such liability is not voidable at the will of the maker, but survives his death and is enforceable against his estate. The authority accompanying such liability is none the less irrevocable, because it is a power coupled with an interest. And the Vermont court recognized this principle, stating that such a power was not revoked by the death of the drawer of a bill where it is coupled with an interest, and citingPerry v. Crammond, 1 Wash. C.C. Rep. 100. See, also, the cases on this point cited at page 21 of the report. And generally, see 21 R.C.L. 808 tit. "Powers" §§ 43 et seq.
In Appeal of Bechtel (1890), 133 Pa. St. 367;19 Atl. Rep. 412, the supreme court of Pennsylvania held that blanks in a note could properly be filled in after the maker had become mentally incapacitated by a stroke of apoplexy.
In Brown v. Thomas, supra, a note completed after the maker's death was held valid, although it should be noted that the liability of a living endorser was there involved, and not that of the estate of the maker. *Page 53 
In Usher v. Dauncey (1814), 4 Campb. (Eng.) 97; 15Rev. Rep. 729, it was held that a bill of exchange drawn in blank by a member of a partnership was good in the hands of abona fide holder although completed after the death of the member who drew it and the partnership received none of the proceeds.
Hatch v. Searles, supra, supports the proposition that the authority to complete a blank acceptance, coupled with an interest, is not revoked by the death of the party conferring such authority.
In the instant case, the authority of the accountant to complete the note was coupled with an interest and was not revoked by the death of the maker.
The only remaining question is whether the power was exercised within a reasonable time. No hard and fast rule on this question can be laid down. The circumstances of each case as it arises must be decisive. Death might well be a factor to consider in reaching a decision, but should not be controlling, for while its certainty is assured, the time thereof is not. The following cases are examples of reasonable and unreasonable periods: InMadden v. Gaston (1910), 137 App. Div. 294;121 N.Y. Supp. 951, eight months after delivery of check was held unreasonable. In Paschke v. Stoller (1926), 189 Wis. 348;207 N.W. Rep. 704, a year was held to be an unreasonable period, and likewise fourteen months in Columbia River Door Co. v. Timms (1928),127 Or. 227; 271 Pac. Rep. 607. On the other hand, a delay of seven years was held reasonable in Finley v. Rose (1920),189 Ky. 359; 224 S.W. Rep. 1059.
The delay in the instant case, prior to decedent's death, was due to the ignorance of the parties; that subsequent to the death, to the illness of the accountant. Both were excusable and, under the circumstances, the period of fourteen months which elapsed from the date the note was signed by the decedent until completed at the direction of the accounant cannot be said to be unreasonable.
 The decision of the orphans court will be affirmed. *Page 54