SAXON v. McGILL.

Opinion delivered April 29, 1929.

416

*Barber & Henry, Troy W. Lewis* and *Clayton Free-man,* for appellant.

*Osborne W. Garvin* and *Charles Q. Kelley,* for appellee.

HART, C. J., (after stating the facts). The court erred in directing a verdict for the defendants. Under the facts stated, before the enactment of our Negotiable Instruments Act, the plaintiff, as payee, could be a *bona fide* holder for value without notice, and was entitled to recover.

In *White-Wilson-Drew Co.* v. *Eglehoff,* 96 Ark. 105, 131 S. W. 208, it was held that one who signs as surety

a note, blank as to the amount, under an agreement with the maker that it should be filled in for an amount not to exceed a specified sum, and the maker filled in the blank in an amount greatly in excess of the agreed sum, was liable to a payee who took without notice of the violation of the agreement as to the amount. The court said that in such cases the payee was a *bona fide* holder, even though he knew that the note was signed in blank. The reasoning of the court was that the signing in blank authorized the filling of the blank by the person to whom the signers delivered it, although the specific directions might not have been followed. The court said that the signatures of the sureties operated as a general letter of credit, which authorized the party to whom it was delivered to fill it up in any manner not inconsistent with the character of the paper; and an agreement between the signers and the person to whom the paper was delivered that it was to be filled up for a certain amount or in a particular way did not affect one who takes the paper without notice of the agreement. Under such circumstances, if the payee receives it for value, without knowledge of the fact that the agent had exceeded his authority, he is protected from any infirmities in the paper.

This brings us to a consideration as to whether the rule has been changed by the Negotiable Instruments Act. Section 7780 of Crawford & Moses' Digest reads as follows:

"Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature, in order that the paper may be converted into a negotiable instrument, operates as a *prima facie* authority to fill up for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who becomes a party thereto prior to its completion, it must be filled

up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.''

Section 7817 provides that the holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument.

Section 7818 defines holder in due course. He is one who takes the instrument under the following conditions: (1) that it is complete and regular on its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was a fact; (3) that he took it in good faith and for value; (4) that, at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Keeping in mind the provisions of these sections of the Negotiable Instruments Act, we conclude that the rule of the law merchant has not been changed, and that where a party signs his name to a blank note and delivers it to another he thereby makes the holder his agent, with authority to fill up the note in any manner not inconsistent with the character of the paper, and private agreements between the parties will not affect one who takes it without notice of the agreement. *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462, 105 N. E. 605, L. R. A. 1915B, p. 144; and *Ex parte Goldberg,* 191 Ala. 356, 67 So. 839, L. R. A. 1915F, p. 1157.

Under such circumstances the signers are bound, if the party received the note for value, before maturity, without knowledge of the fact that the agent had exceeded his authority. It would seem that the reason for inserting the word ''maturity'' in the printed form of notes prepared by banks is that it is the custom of

banks to take out the interest before delivering the money to the makers of the note. In any event the mere fact that the word "date" was substituted for the word "maturity," as it appeared on the printed form of the note, would not give the payee of the note any notice that the substitution or alteration had been made without the knowledge of the persons who signed the note as sureties. He would have a right to assume that the substitution or alteration was made before they signed the note, or that it was done with their consent by the person to whom they intrusted the note for negotiation.

The addition of the words "I, we, or either of us" did not in any manner affect the liability of the parties. The legal effect of the note sued on was in no way changed.

Neither was the legal effect of the note changed by striking out the words "Central Bank" as they appeared in the printed form of note as payee. Any one would think that a printed form of note of this bank had been used by the parties, and that the words "Central Bank" had been struck out when the makers and sureties of the note desired to procure the money from another person. The record shows that Saxon was so advised by an attorney whom he consulted, and the mere fact that he consulted an attorney in this regard did not put him upon notice that Beavers, the holder of the note, had substituted the word "date" for "maturity" after McGill and Mason had signed it and before it had been presented to Saxon.

The result of our views is that the court erred in directing a verdict for the defendants, and should have directed a verdict for the plaintiff. Inasmuch as the case seems to have been fully developed, the judgment will be reversed, and judgment will be entered here for the full amount of the note, together with the accrued interest. It is so ordered.