CURLEE CLOTHING COMPANY V. C. L. WICKLIFFE.

No. 6555. Decided February 12, 1936.
(91 S. W., 2d Series, 677.)

*J. R. Ogle,* and *Smoot & Smoot,* all of Wichita Falls, for appellant.

The plaintiff, by the introduction of the notes in evidence, has fully discharged the burden placed upon him by the statute in proving the matter alleged in his controverting affidavit. Bradley v. Trinity State Bank, 118 Texas, 274, 14 S. W. (2d) 810.

The holder of the note had the right to fill in the blank space showing place of payment. Jones v. Primm, 6 Texas, 170; Close v. Fields, 2 Texas, 232; 8 C. J., 183; 3 R. C. L., 874.

*L. W. Allred,* of Chillicothe, for appellee.

MR. JUSTICE SHARP delivered the opinion of the court.

The Court of Civil Appeals at Amarillo has certified to this Court certain questions. The case involves the question of venue and the construction of Art. 5932 et seq., of Title 98, Revised Civil Statutes of Texas, known as the Negotiable Instruments Act. Prior to certification, the Court of Civil Appeals held that the venue was in Hardeman County, and not in Wichita County, as contended for by appellant. 38 S. W.

(2d) 175. On account of the conflict between the decision of the Court of Civil Appeals in this case and the opinions of other courts of civil appeals on this identical question, and in response to a petition for mandamus, this Court, in an opinion written by Judge Leddy, a member of the Commission of Appeals, directed that the question of venue be certified. Curlee Clothing Co. v. Hall, 122 Texas, 456, 60 S. W. (2d) 202.

In the certificate the facts stated by Judge Leddy in his opinion are adopted by the Court of Civil Appeals. They read as follows:

"The question decided by the Court of Civil Appeals, about which complaint is made, arose in an appeal from an order of the county court at law of Wichita County, sustaining a plea of privilege urged by Wickliffe. It appears from the testimony taken on the hearing of the plea of privilege that Wickliffe was indebted to the Curlee Clothing Company upon an open account. The account was placed in the hands of an attorney, who notified Wickliffe that suit would be brought unless it were paid promptly. After some negotiations an adjustment was reached, by the terms of which Wickliffe agreed to pay the clothing company $200 and execute his two promissory notes for the balance of the account. The attorney for the latter company sent Wickliffe two blank forms of promissory notes, with the direction that he fill out these notes for the amount agreed upon and return them with his check for $200. A short time thereafter the notes were returned by Wickliffe to the company, properly filled out with the exception that the blanks for place of payment in the notes were left unfilled. Wickliffe, however, failed to send with said notes the agreed cash payment. Mr. Curlee's attorney, upon receiving the notes, wrote Wickliffe, calling attention to his failure to send the cash payment, and notifying him that suit would be instituted unless prompt remittance was made. His letter concluded as follows: 'I note in preparing these notes for me that you did not provide any place that they were to be made payable. Naturally, I expect them to be made payable at Wichita Falls. I have filled this in accordingly, as I never handle any notes unless made payable here. Please state whether or not this is agreeable.' Wickliffe received this letter, and a few days later sent his check to Curlee's attorney, accompanied by the following letter: 'Enclosed find check for Curlee acct. I would have sent it yesterday but I went down to East Texas Sunday to sell some property to be able to pay it and lost about 500 on it thanks to Curlee's impatience.

Thanking you very much for your consideration, I am yours truly.' "

It is undisputed that the notes signed by Wickliffe to Curlee Clothing Company in part read: "I * * * promise to pay to the order of Curlee Clothing Co. at_____Texas," and that the attorney for Curlee Clothing Company filled in the blank by adding "Wichita Falls," and that the wrote Wickliffe that the blanks had been so filled in.

In the opinion of the Court of Civil Appeals it is said:

"Wickliffe filed his plea of privilege to be sued in Hardeman County, the county of his residence. The plaintiff filed a controverting affidavit, alleging that the venue was properly laid in Wichita County, because the notes were payable there. The Court concluded as a matter of law that filling in the place of payment which Wickliffe had left blank in the notes was a material alteration and had no force in fixing the venue in Wichita County, and sustained the plea of privilege."

In addition to the question of venue, the Court of Civil Appeals certified other questions. They read as follows:

"1. Is the suit by Curlee Clothing Company against Wickliffe upon the notes in question based upon a contract in writing providing for performance in Wichita County so as to fix the venue in the suit thereon in such county under the provisions of Subdivision 5 of Article 1995 of the Revised Civil Statutes of Texas?

"2. Did the relator discharge the burden of proof placed upon him by filing the plea of privilege when he proved the execution of and offered in evidence the notes signed by Wickliffe and made payable on their face at Wichita Falls, Texas?

"3. Did the defendant, by sending plaintiff, or its attorneys, the notes in question with the place of payment left blank, impliedly authorize the payee, or holder, of the note to fill in such blank with a designated place of payment under Art. 5932, Sec. 14, Revised Statutes, ordinarily known as the Uniform Negotiable Instrument Act?

"4. After the attorney for the plaintiff had filled in the place of payment left blank in the notes in question, and had notified defendant of such fact, and asked if such addition was satisfactory to defendant, did the defendant by going forward with the transaction and failing to protest against such addition to the notes, thereby ratify the act and become bound thereby under the venue statute, so that suit could be brought thereon at Wichita Falls?"

Since Questions Nos. 3 and 4 are closely related, and constitute the dominant basis for a decision in this case, we shall consider them first, and together.

Section 14 of Article 5932 in part reads:

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time."

Section 124 of Article 5939 provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers."

Section 125 of Article 5939 furnishes the rule as to what constitutes a material alteration in a note in the following particulars:

"Any alteration which changes * * *

"(3) The time or place of payment. * * *"

The foregoing articles of the statutes should be construed together, in order to arrive at the intention of the Legislature in passing this Act.

■ Long before the Negotiable Instruments Law was in force, the general rule was announced that where a party to a negotiable instrument entrusts it to the custody of another, with blanks not filled in, such negotiable instrument carries on its face an implied authority to fill in the blanks and perfect the instrument, so far as consistent with its printed words. Bank of Pittsburg v. Neal et al., 22 How., 96, 16 L. Ed., 323; Farmers & Merchants Nat'l Bank v. Novich, 89 Texas, 381, 34 S. W., 914; Hansborough v. Towns, 1 Texas, 58; Carter v. Eames, 44 Texas, 544; Glasscock v. First Nat'l Bank, 114 Texas, 207, 266 S. W., 393, 36 A. L. R., 320; Close v. Fields, 2 Texas, 232; 3 R. C. L., p. 874, sec. 59, pp. 1116 and 1117, sec. 331; 12 Texas Jur., p. 708; 8 C. J., p. 731, sec. 1013.

In Daniel on Negotiable Instruments (6th ed.), Vol. 2, Sec. 1406, it is said:

"Where after the word 'at' a blank was left, and it was filled, so that the note was made payable at an unauthorized place, it was held that the word 'at' implied that the blank space which succeeded it might be filled before the note should be delivered, with a designated place of payment, and that if the holder filled in a place of payment, it would not discharge the maker."

See Johnson v. Hoover, 139 Iowa, 143, 117 N. W., 277; 1 R. C. L., p. 1029, sec. 64; 8 C. J., p. 185, sec. 315. See also 31 L. R. A. (N. S.), p. 650, for a discussion of the cases bearing upon this question in the foot notes.

It has been held by the courts of this State, and the courts in other jurisdictions, in cases where the place of payment was designated and a different place was inserted by the payee, that under the Negotiable Instruments Act the change by the payee of the place of payment of the note was a material alteration, rendering it unenforceable. Benson v. Adams, 285 S. W., 818 (Comm. Appls.); Marion Savings Bank v. Leahy et al., 200 Iowa, 220, 204 N. W., 456; Mitchell v. Reed, 32 Ky. L. Rep., 683, 106 S. W., 833; 2 C. J., p. 1201, sec. 48, and authorities cited. In the Benson Case, supra, it appeared that the place of payment at Plano was erased, and the word "Houston" inserted. The issue was raised, and the jury found that the word "Houston" was written in the note after it was signed, and that the maker did not ratify or consent to the change after knowledge thereof. This holding is in harmony with the weight of authority.

■ When we construe the provisions of the Negotiable Instruments Act, in the light of the undisputed facts of this case, we are not compelled to decide whether or not the insertion of the words "Wichita Falls" after the word "at," as the place of payment in the notes, was authorized under the provisions of Section 14 (Art. 5932) as completing a note wanting in any material particular by filling up the blanks therein; nor are we compelled to decide whether or not the insertion of such words rendered the notes unenforceable by reason of the notes being materially altered without the consent of the maker, as provided for in Section 124 and Subsection 3 of Section 125 (Art. 5939). The facts involved here do not demand such action in order to reach a decision in this case.

The facts of this case are clearly distinguishable from the facts in the Benson and other cases cited above. Wickliffe, who lived at Chillicothe, Texas, was indebted to the Curlee Cloth-

ing Company, whose place of business was at Wichita Falls, Texas. Wickliffe desired time for payment of his indebtedness, and agreed to pay a certain sum in cash and execute notes for the remainder. In compliance with this agreement, blank notes were sent to him at Chillicothe, to be filled out and executed by him. He did execute the notes, but left the place of payment blank; and the attorney for Curlee Clothing Company immediately called his attention to this omission and his failure to remit the cash payment as had been agreed upon. Furthermore, he was informed that the Curlee Clothing Company never accepted notes payable elsewhere than at Wichita Falls, and that the blanks had been filled in, making the notes payable at Wichita Falls; and he was asked to state whether or not this was agreeable. Shortly thereafter Wickliffe remitted the cash payment, and not one word of protest was made by him to the action of the attorney in filling in the blanks left for that purpose. It certainly cannot be said that the words "Wichita Falls" were inserted in the notes without the consent and knowledge of the maker thereof, because he was immediately acquainted of the insertion and that it was the custom of the payee of the notes to take all notes payable at Wichita Falls. If the insertion of the place of payment in the blanks left in the notes for that purpose did not meet the approval of the maker, he should have made known his disapproval. If it could be said that the insertion of "Wichita Falls" in the notes was done without his invitation or consent, nevertheless we think the undisputed facts unmistakably show that, as a matter of law, he ratified the act of the attorney in making the insertion. People's Finance Co. v. Sabanovich, 26 S. W. (2d) 187 (Comm. Appls.); 3 R. C. L., pp. 874, 1116, and 1117, sections 59 and 331; 2 Texas Jur., p. 699, sec. 7; 2 C. J., pp. 1255, 1256, and 1257, sections 145-155.

We answer Question No. 3 as above indicated, and answer Question No. 4, "Yes."

In answer to Questions Nos. 3 and 4, we hold that the notes in controversy are enforceable. In view of this holding, the notes in controversy constitute a contract in writing to perform an obligation in Wichita County, and suit can be maintained on the notes in that county by virtue of Subdivision 5 of Article 1995 of the Revised Civil Statutes of Texas.

We answer Question No. 1, "Yes."

■ It is now the established rule that when a defendant files a plea of privilege in conformity with Article 2007 of the

Revised Civil Statutes, the burden is placed upon the plaintiff to file a controverting affidavit and produce evidence to overcome the prima facie case made by defendant in his plea of privilege. Johnson v. Dallas Cooperage & Woodenware Co., 120 Texas, 27, 34 S. W. (2d) 845 (Comm. Appls.); Berry v. Pierce Petroleum Corp., 120 Texas, 452, 39 S. W. (2d) 824 (Comm. Appls.); Ketner et al. v. J. M. Radford Grocery Co., 299 S. W., 680 (Civ. Appls.).

In this case Wickliffe filed his plea to be used in Hardeman County instead of Wichita County. Nothing more was required of him with respect to this plea. That placed the burden upon the Curlee Clothing Company to allege and prove that Wickliffe had executed the notes. This was done, and then the notes were introduced in evidence. This met the burden placed upon the Curlee Clothing Company to establish the right to maintain the suit in Wichita County.

We answer Question No. 2, "Yes."

Opinion delivered February 12, 1936.