**REPUBLIC NATIONAL BANK OF DALLAS, Independent Executor of the Estate of Ray K. Glenn, Deceased, Appellant,**

v.

**Leonard STREALY, Appellee.**

No. 16155.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 3, 1961.

Rehearing Denied March 3, 1961.

Jackson, Walker, Winstead, Cantwell & Miller, A. W. Walker, Jr., Jack Pew, Jr., Dallas, for appellant.

Elmo Irby, Fort Worth, for appellee.

PER CURIAM.

On December 31, 1953, Leonard Strealy executed a note in the principal sum of $8,838.15, payable to the order of Ray K. Glenn "at ———————". When the note was made and delivered, Strealy lived in Fort Worth, and Glenn had an office in Fort Worth, where he transacted business. Strealy made payments on the note at such office. Sometime afterward, the date not being shown, Glenn moved to California, and then to Dallas, where he died about four years after the date of the note. Republic National Bank of Dallas became independent executor of his estate.

On October 9, 1958, the Bank sued Strealy in the District Court of Dallas County for the balance claimed to be owing on the note. Strealy filed a plea of privilege to be sued in Tarrant County, the county of his residence. After such plea was filed, the Bank, on the advise of counsel that it had the right to do so, wrote the words "Dallas, Texas" in the space after the word "at," thus indicating that the note was, by its terms, made payable in Dallas.

When Strealy appeared for a hearing on his plea of privilege the Bank dismissed the Dallas County suit, and afterward filed suit in the District Court of Tarrant County on the alleged debt by way of verified account, and alternatively, on the note, alleging the balance owing to be $3,640.36. Strealy pleaded that there could be no recovery because there had been a material alteration of the note by the addition of the words "Dallas, Texas," which, he alleged, the Bank had accomplished with the fraudulent intent to deprive him of the right to pay the note, and to be sued on it, in the county of his residence. The jury found that the words were written in the note for the sole purpose of fraudulently preventing a transfer of the suit to Tarrant County. A take nothing judgment was entered against the Bank, and this appeal followed.

We think the judgment is correct. Sections 124 and 125, Article 5939, Vernon's Ann.Tex.St., provide that where a negoti-

able instrument is materially altered without the assent of all the parties liable thereon it is avoided, and that any alteration which adds a place of payment where no place of payment is specified is a material alteration.

Appellant says it was authorized to add the words "Dallas, Texas" by the provisions of Section 14, Article 5932, as follows: "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

It would seem that a reasonable construction of the expression "wanting in any material particular" is that the instrument as originally written was not a complete legal negotiable instrument, or that it imperfectly expressed the intentions of the parties. "Material" has been defined as "Of solid or weighty character; substantial; of consequence; not to be dispensed with; important." Webster's New International Dictionary, Second Edition. We do not think the note was imperfect, but was a complete legal instrument, when it left the hands of the maker. If so, Section 14 of Article 5932 would appear not to be applicable. But if applicable, all of its provisions must be construed together, and it must be considered along with the provisions of Sections 124 and 125 of Article 5939. Cur-

lee Clothing Co. v. Wickliffe, 126 Tex. 573, 91 S.W.2d 677; Clem Lumber Co. v. Barnett, Tex.Civ.App., 158 S.W.2d 837; Simpson v. First Nat. Bank, 94 Or. 147, 185 P. 913; Stout v. Eastern Rock Island Plow Co., 202 Ind. 517, 176 N.E. 844, 75 A.L.R. 1386; Hartington Nat. Bank v. Breslin, 88 Neb. 47, 128 N.W. 659, 31 L.R.A., N.S., 130.

Before the adoption of the Negotiable Instruments Act it was generally held that one in possession of such an instrument had implied authority to fill blanks and perfect the instrument. Curlee Clothing Co. v. Wickliffe, supra. In some jurisdictions, however, the rule was applied, if at all, in a very restricted sense. Cronkhite v. Nebeker, 81 Ind. 319, 42 Am.Rep. 127; Bowen v. Laird, 166 Ind. 421, 77 N.E. 852; Carroll v. Warren, 142 Ala. 397, 37 So. 687. In some cases the maker was held on the ground of negligence or estoppel. So there was little uniformity in applying the general rule to particular cases. Said the court in Holmes v. Trumper, 22 Mich. 427, 7 Am.Rep. 661, "We think the courts have gone quite far enough in sustaining instruments executed in blank, and the implied authority to fill them up, and we are not disposed to take a step in advance in that direction."

The case at bar is controlled by the provisions of the Negotiable Instruments Acts; and we have found no Texas authority which construes the Act in the particulars here involved. Our exact question arose in the Curlee case, supra, but its decision was not necessary to a disposition of the appeal, and it was not decided.

In other jurisdictions the holdings are not uniform as to the authority, under the Negotiable Instrument Laws, of one in possession of a note to fill a blank making it appear to be payable at a certain place when the original note was payable "at ————." An emphatic declaration that such authority exists is found in Diamond Distilleries Co. v. Gott, 137 Ky. 585, 126 S.W. 131, 31 L.R.A., N.S., 643. There was a strong dissent; and some of the decisions cited by the court appear not to support its position, most if

not all of which were rendered prior to the adoption of the Negotiable Instrument Law, and some involving the rights of holders in due course. A similar conclusion was reached in Citizens' State Bank of Earlham v. Martens, 204 Iowa 1378, 215 N.W. 754, and in Blochman Commercial & Savings Bank v. Ketcham, 36 Cal.App. 284, 171 P. 1084, although it is not clear from the opinion in the California case whether the Negotiable Instrument Law was considered.

The Negotiable Instrument Act appears to have cut down the authority of a holder to fill blanks from "implied" to "prima facie". Implied authority is as strong as express, while prima facie may be rebutted. Cottle v. Sanders, Tex.Civ.App., 40 S.W.2d 979. It was shown that appellee and Glenn had transacted business with each other in Fort Worth for many years; appellee did not give Glenn authority to fill the blank; there was no intimation that either contemplated that the note would be payable at any place except Fort Worth; and appellee did not agree to or ratify the act of alteration.

Construing negotiable instrument laws exactly like ours, the following authorities seem to be somewhat in point: The Supreme Court of Indiana, in Stout v. Eastern Rock Island Plow Co., 202 Ind. 517, 176 N.E. 844, 845, said: "While our Negotiable Instrument Law in many respects retains principles previously established by the law merchant, yet in respect to the filling of blanks essential to make the instrument negotiable, authority so to do has been restricted to the agreement of the parties at the time of signing." In Kramer v. Schnitzer, 268 Ill. 603, 109 N.E. 695, 696, it was said: "Limiting the inquiry to the question of the extent of the authority of the original payee to fill blanks and perfect the instrument, it would not be profitable to review the decisions prior to the passage of the act in question, for the reason that it makes specific provision for such cases as this. The defendant in error became a party to the notes prior to their completion, and the law as fixed by the act is, that where there are blanks in an instrument a person in possession has prima facie authority to complete the instrument by filling up the blanks, but in order that it may be enforced, when completed, against any person who became a party thereto prior to its completion, the blanks must be filled up strictly in accordance with the authority given and within a reasonable time. * * * the authority to fill blanks * * * is limited to the insertion of such things as were contemplated by the parties when the instrument was executed." To the same effect are expressions in Tower v. Stanley, 220 Mass. 429, 107 N.E. 1010, and Hartington Nat. Bank v. Breslin, supra.

In Clem Lumber Co. v. Barnett, supra, it was held that the insertion of the figure "8" in the blank space in a note where no rate of interest was provided was a material alternation which avoided the note. The decision may have been influenced by the fact that eight per cent interest is above the legal rate.

We have seen no case in which the words "where no place of payment is specified," as they appear in Section 125, Article 5939, have been construed. According to Webster's New International Dictionary, Second Edition, "specified" means mentioned or named in a specific manner, or told or stated precisely or in detail. We cannot escape the conclusion that in the original note no place of payment was specified, and with the note in that condition appellant added a place of payment.

■■ There is a presumption of fraud when a material alteration is made in a note, and the burden is on the one making the alternation to show that it was innocently done. A change in the note which, if binding on appellee, would not only require him to pay the note in Dallas, which was not in the contemplation of the parties, but, in the event of suit, to defend in Dallas, either of which would be somewhat burdensome, is in our opinion a species of legal fraud, even though appellant may have thought it had a right to make the change. Benson v.

Adams, Tex.Com.App., 285 S.W. 818. The vice in the alteration cannot be measured by the degree of injury or hazard which it imposed. Glenn is dead. He did not see fit to fill in any place of payment during the years he held the note up to the date of his death. It might be safely said that he did *not* complete the note in such respect within a reasonable time after he received it. Glenn's executor was not "a holder in due course."

 Should it be conceded that there is an obligation, other than the note, representing the consideration for which the note was given, it would be necessary for appellant, in order to recover on that obligation, to show that the alteration was innocently made without intent to injure or defraud, and thereby rebut the presumption of fraud which arises from the wrongful act. Benson v. Adams, supra.

The judgment is affirmed.