REPUBLIC NATIONAL BANK OF DALLAS, INDEPENDENT EXECUTOR OF THE ESTATE OF RAY K. GLENN, DECEASED, Petitioner

v.

LEONARD STREALY, Respondent

No. A-8331. Decided November 1, 1961
Rehearing Denied December 6, 1961
(350 S.W. 2d 914)

*Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr.,* Dallas, with firm, for petitioner.

*Elmo Irby,* Fort Worth, for respondent.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

This case involves the question of the legal effect of a negotiable instrument where the place of payment had been left blank but was filled in by the holder without express authority of the maker.

On December 31, 1953, Leonard Strealy executed a note in the principal sum of $8,838.15, payable to the order of Ray K. Glenn "at_____". At the time of making delivery of the said note both parties lived in Fort Worth. Later Glenn moved to California and then to Dallas, where he died about four years after the date of the note. The Republic National Bank of Dallas, the petitioner here, became independent executor of his estate. Payment on the note had always been sporadic, but shortly after Glenn's death Strealy signed an agreement with the Republic National Bank agreeing to make regular payments. After several payments to the bank Strealy once again became delinquent. On October 9, 1958, the bank sued Strealy in the District Court of Dallas County for the balance claimed to be owing on the note. Strealy filed a plea of privilege to be sued in Tarrant County, the county of his residence. After the plea was filed, counsel advised the bank that it had the right to insert the words "Dallas, Texas" in the blank space in the note after the word "at", thus indicating that the note was made payable in Dallas. This was done, and the bank's attorney immediately notified the respondent and his attorney of the filling in of the blank and of the legal authority upon which they had relied. However, before any action was taken on the plea of privilege, the petitioner took a nonsuit in the Dallas County action and commenced this suit in the 153rd District Court of Tarrant County, Texas.

Petitioner's cause of action was based upon a verified account and alternatively on the note, alleging the balance owing on the note to be $3,640.36. Strealy did not file a general denial, but pleaded that the verified account was untrue in whole or in part and that the note was avoided by the action of the bank in filling in "Dallas, Texas" in the space in the note left blank for the place of payment; that such action constituted a material alteration of the note, that it was fraudulently done, and that it dis-

charged respondent from liability on the note and underlying debt. The substance of Strealy's testimony was that he had not given any express authority for anyone to fill in the blank space with a place of payment.

The bank's motion for directed verdict was overruled, the court submitted a single special issue to the jury, and the jury answered that the action of the plaintiff in writing "Dallas, Texas" into the note in question was for the sole purpose of fraudulently preventing the transfer of the suit to Tarrant County. Petitioner's motion for judgment non obstante veredicto was overruled and judgment was rendered that petitioner, Republic National Bank, take nothing. This judgment was affirmed by the Court of Civil Appeals, which held that the petitioner avoided the note by materially altering it and thereby also avoided the underlying debt because the alteration amounted to a species of legal fraud. 343 S.W. 2d 284. We reverse the judgments of the trial court and Court of Civil Appeals and render judgment for petitioner.

■ The bank contends that the insertion of a place of payment in a blank space provided for that purpose is not a material alteration as defined in Section 125 of Article 5939, Texas Civil Statutes (Vernon 1948), and that it had the right to fill in such blank under Section 14 of Article 5932, and that regardless of its legal right to do what it did there was no evidence of fraud on its part. Respondent, Strealy, contends that Sections 124 and 125 of Article 5939 control, and that the filling in of the blank space was a material alteration which avoids the instrument and that such action constituted fraud, which discharges the underlying debt.

We hold that Section 14 of Article 5932 governs in this case.

Section 124 of the Negotiable Instruments Act (Art. 5939, V.C.S.), provides that "Where a negotiable instrument is materially altered * * * it is avoided * * *."

Section 125 of the Negotiable Instruments Art (Art. 5939, V.C.S.) defines a "material alteration" as:

"Sec. 125 * * * * —Any alteration which changes:

"3. The time or place of payment;

"Or which adds a place of payment where no place of payment is specified, * * * is a material alteration."

The filling in of blank spaces of negotiable instruments is governed by Section 14, Article 5932, V.C.S., which reads:

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

At first glance it might appear that these sections are in conflict. Section 14 authorizes completion of the instrument by the filling in of blanks, but Section 125 says that the adding of place of payment where no place of payment is specified is a material alteration, and Section 124 says a material alteration will avoid the note.

The Legislature did not intend these sections to be in conflict, and if they can be reasonably harmonized so as not to be in conflict it is the court's duty to so construe them. Hill v. State, 54 Texas Crim. 646, 114 S.W. 117.

In order to resolve the seeming conflict between Sections 14 and 125 it is necessary to become involved with semantics. Section 125 talks only of "changes" and "additions" which constitute a material alteration. Section 14 deals with "completions" by filling up blank spaces left in the instrument. In construing this language it appears probable that the Legislature intended "changes" to mean the marking out, erasing, detaching, or writing over of parts of an already completed instrument, and the word "addition" to mean the insertion of a new clause or wording where no blank is provided. See for example cases and annotations in 5 Uniform Laws Annotated (Part 2), Section 125 (Uniform Negotiable Instruments Act). We believe that Section 125 is not applicable to completing a note by filling in of blanks.

In the case of Citizens' State Bank v. Martens, 204 Iowa 1378,

215 N.W. 754, The Supreme Court of Iowa was also faced with the problem of a conflict between Section 14 and Sections 124 and 125. That court said:

"* * * When harmony, uniformity, and enforcement of all portions of the act are possible, it is our duty so to proceed in order that no part will be discarded and the entirety made effective. Truly, a material alteration will work an avoidance; also 'change of place of payment' may amount to such 'material alteration'; but not so if the transaction involves the 'filling in' of a blank intended therefor, within the purview of said Section 9474. * * * [Sec. 14 NIL].

* * * * * *

"Therefore Section 9474 [Sec. 14 NIL] prevails where the facts and circumstances are such as are therein contemplated, and in that contingency Sections 9585 and 9586 [Secs. 124 and 125 NIL] have no bearing on the situation."

Therefore, if the filling in of a blank is not a material alteration under Section 125, Section 124 would not apply to avoid the note, as it applies only "where a negotiable instrument is materially altered * * *."

Another indication of the intention not to call "filling in the blank" a "material alteration" can be derived from comparing the legal effect of a materially altered note in the hands of a holder in due course not a party to the alteration (Sec. 124), with a note that has had a blank filled in contrary to authority given or not within a reasonable time and then negotiated to a holder in due course (Sec. 14). In the first instance the innocent holder can enforce payment of the note, but only in the amount of the original tenor. Whereas, in the case of an unauthorized filling in of blanks, when it is negotiated to a holder in due course after the unauthorized completion, "it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time." Sec. 14. If filling in the blanks is a material alteration, would not Section 124 allow a holder in due course to enforce payment of a note only according to its original tenor? What then would be the effect of the last sentence of Section 14? In order to harmonize these two sections of the Negotiable Instruments Act, we must say that the filling in of blank spaces is not an alteration; therefore, in cases involving the filling in of blanks left in negotiable instruments, Section 14 must be applied.

■ In applying Section 14 to petitioner's act of filling in the words "Dallas, Texas" it must be determined whether this act was done strictly in accordance with the authority given. The general rule seems to be that where a writing containing unfilled blanks has been delivered there is implied authority to fill in the blanks, the instrument remaining valid. See Mazanec v. Lincoln Bonding and Insurance Co., 169 Neb. 629, 100 N.W. 2d 881; Simpson v. First National Bank of Roseburg, 94 Ore. 147, 185 Pac. 917; Holman v. Higgins, 134 Tenn. 387, 183 S.W. 1008; Curlee Clothing Co. v. Wickliffe, 126 Texas 573, 91 S.W. 2d 677; 7 Am. Jur., "Bills and Notes", Sec. 67; 3 Texas Jur. 2d, "Alteration of Instruments", Sec. 34; 10 C.J.S., "Bills and Notes", Sec. 136c(3) ; 8 C.J., "Bills and Notes", Sec. 315.

■ As this court pointed out in Curlee Clothing Co. v. Wickliffe, supra, the authority to fill in the blank spaces in negotiable instruments did not originate in a uniform negotiable instruments law. The law is summarized in the Curlee case as follows:

"Long before the Negotiable Instruments Law was in force, the general rule was announced that where a party to a negotiable instrument intrusts it to the custody of another, with blanks not filled in, such negotiable instrument carries on its face an implied authority to fill in the blanks and perfect the instrument, so far as consistent with its printed words."

Numerous authorities say that Section 14 of the Negotiable Instruments Law is declaratory of the common law. Saxon v. McGill, 179 Ark. 415, 16 S.W. 2d 987; Diamond Distilleries Co. v. Gott, 137 Ky. 585, 126 S.W. 131; Linthicum v. Bagby, 131 Md. 644, 102 Atl. 997; Stephens v. Underwood, 157 S.W. 2d 936, Texas Civ. App., no writ history; Brown v. Thomas, 120 Va. 763, 92 S.E. 977; 10 C.J.S., "Bills and Notes", Sec. 136.

"* * * Manifestly a note executed and delivered by the maker in the form originally presented by the one under consideration is not upon its face a completed instrument. When one executes and puts in the hands of another a note provided with a blank line or space, apparently intended to be filled with the name of a bank, or other place of payment, any holder in due course of the note has prima facie authority to fill such blank; and especially would such authority be implied where the blank line or space immediately follows a word which unmistakably indicates that it is to be filled with the place of payment. The word 'at' in the note executed by appellee with the blank or space following it was well calculated to produce

in the minds of any holder of the note a reasonable belief that the filling of the blank with a place of payment was necessary to complete the instrument, and that he was authorized, if not invited, to fill it. Indeed, if the blank therein was not such a one as the framers of the statute, supra, contemplated should be filled by the 'person in possession thereof', it would be difficult to conceive of a blank that would justify the prima facie right to fill it conferred by the statute."

■ The Court of Civil Appeals held that the instant case is outside the scope of Section 14 because it concluded an instrument without a place of payment is not "wanting in any material particular", a requirement of that section. No case was cited supporting such holding and we have found none. The precise point was considered by the Supreme Court of Iowa in Johnston v. Hoover, 139 Iowa 143, 117 N.W. 277, and the court specifically held that an instrument with the space for a place of payment left blank is wanting in a material particular. We agree with that holding.

The Supreme Court of Vermont in Howard National Bank v. Arbuckle, 92 Vt. 86, 102 Atl. 477, held that a "material particular" does not mean such as may be necessary to make the instrument a negotiable note, but includes "any particular" proper to be inserted in such an instrument.

■ Respondent contends that even if petitioner did have prima facie authority to fill in the place of payment, the prima facie authority was rebutted by the testimony that respondent did not give Glenn authority to fill in the blank and that both parties lived in Tarrant County at the time of the execution and delivery of the note. In the first place the authority under Section 14 is not given just to the payee in the note, but is given to any "person in posession" of the note. No one knows where any "person in possession" might live; therefore, the fact that both of the original parties to the instrument lived in Fort Worth creates no presumption as to place of payment. The testimony that the respondent did not give Glenn express authority to fill in the note amounts to no more than evidence that there was no agreement with reference to the filling in of the place of payment in the blank space. This is not sufficient to rebut the authority given by the statute to the possessor of the note. It can only be overcome by evidence of an express agreement as to a particular place of payment, or that no place shall be filled in.

In Citizens' State Bank of Earlham v. Martens, supra, the maker of the note testified that he had left the place of payment

blank and did not authorize anyone to fill in the place of payment in the blank. The Supreme Court of Iowa said:

> "This is not sufficient to overcome the statutory presumption; for assertion is not made that the act was prohibited or in violation of an express agreement."

See also: Simon v. Mittleman, 258 Mich. 266, 241 N.W. 816; State Bank of Finley v. Doronen, 50 N.D. 583, 197 N.W. 150; Lincoln Deposit & Trust Co. v. Sanker, 305 Pa. 576, 158 Atl. 255; Ellis J. Gomez & Co. v. Hartwell, 97 Vt. 147, 122 Atl. 461.

The provision of Section 14 which reads "In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled * * * up with the authority given and within a reasonable time", appears to be in the form of a statutory condition precedent which must be pleaded in stating the cause of action. 33 Texas Jur., "Pleadings", Sec. 42. In his pleadings petitioner claimed authority under Section 14. If there is no express agreement with reference to such authority, then the prima facie authority granted by the first sentence of the statute acts to supply the "authority given".

■ However, the statute supplies nothing to relieve the requirement of pleading and proving reasonable time as to the filling up of the blank on the part of the petitioner. It had the burden of pleading and proving this in the trial court. Petitioner failed to plead "reasonable time", and it had no such issue submitted to the jury. Failure to meet this burden prevents petitioner from enforcing the note, as this Court cannot say as a matter of law that the blank was filled up within a reasonable time.

However, it is the opinion of this Court that the underlying debt in this instance has not been extinguished even though the note is unenforceable. The case of Otto v. Halff & Bro., 89 Texas 384, 34 S.W. 910, which is a material alteration case (plaintiff scratched out "maturity" and wrote in "date") and not a completion case, puts forth a test we think applicable when there is a question as to whether or not the underlying debt should remain when a note is made unenforceable through some action or inaction on the part of the holder.

■ Essentially this case says the debt is good unless there is a showing by the maker that there was an agreement or understanding that the note given was accepted as payment of the original

account, or that there is fraudulent intent behind the action or inaction which made the note unenforceable. Neither of these requirements was met to avoid the debt in the case before us. There was no pleading of novation nor showing of any such agreement by respondent.

■ As to fraudulent intent, Otto v. Halff says the law will inflict the penalty of forfeiture of the debt if such intent is found. In the case at bar the petitioner filled in the blank space of the note on advice of counsel. This advice was given after consideration of competent legal authority which in fact did give petitioner authority to fill in the blanks. Petitioner immediately notified respondent of the action and even cited the authority on which reliance was made, thereby showing good faith in taking such steps.

The jury found against the petitioner, saying, "Such action was for the sole purpose of fraudulently preventing a transfer of the suit to Tarrant County, Texas." Under the facts of this case we find that there was no evidence of fraud on the part of the petitioner.

The Court of Civil Appeals relies on the case of Benson v. Adams, 285 S.W. 818, (Comm. App.), in determining that petitioner was guilty of a "species of legal fraud".

The present case is distinguishable from Benson v. Adams. That case involved an obvious material alteration, i.e., the erasure of the words "at Plano" and writing in the words "at Houston". In the instant case there was no material alteration, but a filling up of blanks authorized by statute.

In Benson v. Adams the petitioner testified that the notes were taken as payment of the goods and merchandise. In our case there is no evidence that the note was taken as payment for respondent's debt.

Finally, citing among other cases Otto v. Halff, supra, Commissioner Bishop said:

"* * * [I]t was necessary for him to show that the alteration was innocently made without any intention to defraud, and thereby rebut the presumption of fraud which arises from his wrongful act. (cases cited). * * * Adams testified that he knew he had no right to change the place of payment of the note. He knew he was committing a wrongful act which in law

he had no right to commit. Certainly one cannot admit his guilt and at the same time claim innocence."

The case before us is obviously without testimony that the petitioner "knew he had no right to change the place of payment of the note". In fact it is clear that petitioner thought he had the right to insert the words "at Dallas", and relied on statutes and authorities to support this belief. Benson v. Adams does not apply in this case.

■ Respondent asserts that if the note is not good, the debt is barred by the two and four year statute of limitations. By letters written within two years of filing of suit, and by testimony in court, respondent admits the debt. Therefore the two year and four year statutes of limitation do not bar the debt in this case.

It is the opinion of this court that the note in question is unenforceable; however, the underlying debt remains. The judgments of the trial court and Court of Civil Appeals are reversed and judgment rendered for petitioner in the amount of three thousand six hundred forty dollars and thirty-six cents ($3,640.36), plus 6% interest from July 10, 1958.

Opinion delivered November 1, 1961.

ASSOCIATE JUSTICE SMITH concurring.

The filling in of blank spaces of negotiable instruments is governed by Section 14 of Article 5932, Vernon's Annotated Civil Statutes of Texas. The insertion of a place of payment in a blank space provided for that purpose is not a material alteration as defined in Section 125 of Article 5939, Vernon's Annotated Civil Statutes. Strealy pleaded that it was such a material alteration as to render the note void, and that the fraudulent action of the bank in filling in the place of payment discharged the underlying debt. We have held against such contention. In so doing, we have held that the bank was in legal possession of the note; that the note was wanting in a material particular, namely, the place of payment was not inserted in the blank space provided therefor at the time of delivery, and that under such circumstances the bank had a prima facie authority to complete the note.

The bank pleaded that it acted "in good faith reliance on the law as plaintiff supposes it to be that plaintiff had implied authority to fill in the blank following the word 'at' on the promissory note executed by defendant, filled in said blank with the words

'Dallas, Texas'. Thus, plaintiff, suing on the note, asserts its claim based either on the note as it existed before it was thus changed, or on the note after it was thus changed, alternatively."

Of course, the bank sued alternatively upon the promissory note and upon the obligation underlying it. The bank also pleaded for attorneys' fees in connection with such alternative actions.

Strealy did not defend on the ground that the act of the bank in filling in the place of payment was not performed within a reasonable time. There are no pleadings and no evidence was tendered or introduced that Strealy suffered any injury as a consequence of the bank's authorized act in filling in the blank space in the note. Strealy's only defense was that the note was voided because petitioner materially altered it.

Thus, it remains that the prima facie authority, granted by Section 14 of the Negotiable Instrument Act, to fill in an instrument wanting in any particular, can be overcome only by evidence of an express agreement or stipulation by the maker as to the place of payment. In the absence of such an agreement or stipulation by Strealy, it must be presumed that the bank was authorized to fill in "Dallas, Texas", or any other place of its choice. The burden of proving such an express agreement and the violation thereof was on Strealy. See Citizens State Bank v. Martens, 204 Iowa 1378, 215 N.W. 754 (Sup. Ct. Iowa).

Certainly, the note was wanting in material particular. See Howard National Bank v. Arbuckle, 92 Vt. 86, 102 A. 477, for a definition of "material particular" as used in the Negotiable Instrument Act. When the note was completed it was just as though "Dallas, Texas" had been a part of the note from its inception. The holder of the note was not only authorized to fill in the blank and thereby complete the instrument, but the bank in this case was invited to do so. See Diamond Distilleries Co. v. Gott (1910), 137 Ky. 585, 126 S.W. 131, 31 L.R.A. N.S. 643. Not only that, the record in the present case shows that Strealy's action was in accordance with his express agreement that he would make payments under the note to the bank in Dallas, Texas. However, the bank as the "person in possession" had, by statute, "prima facie authority" to type "Dallas, Texas" in the blank space, and was not required to rely upon the authority to do so, which is clearly evidenced by his letter of agreement of February 3, 1958.

It is true that under Section 14, N.I.L., the implied authority

of the bank to fill in the blanks continued for "a reasonable time". What "a reasonable time" is depends upon the circumstances of each case. See Article 5948, Section 193, Texas Negotiable Instrument Act. The fact that the blank was not filled in until after an action was commenced on the note, Allen v. Rousevill Cooperage Co., 157 Va. 355, 161 S.E. 50, or even that the blank had not been filled in until a trial was actually in progress, Cassetta v. Baima, 288 P. 830 (Cal. App.) would not mean that an unreasonable time had elapsed. The blank in our case was filled up within a reasonable time as a matter of law. This is especially true in the absence of any pleading or proof that Strealy suffered injury as a direct result of the delay of the bank in actually filling in the blank, an act which had been impliedly authorized upon delivery of the note. Why should the bank be required to prove that it acted within a reasonable time when there was no denial or claim that it had not so acted?

While in the case of Finley v. Rose (Ky.), 224 S.W. 1059, it is not expressly held that the burden rests upon the maker of the note to prove that the blank space for place of payment was not filled in within a reasonable time, no one can read the opinion without reaching the conclusion that such is the effect of the holding. In that case, the Court held that a delay of *seven years* in filling in a blank did not prevent recovery upon the note involved. The Court said:

"Manifestly, plaintiffs as holders of the note, had the right to fill in the blank and make the note payable to themselves as executors, with the consequent right to bring the suit in their names. * * * In so holding, the original purpose of the parties is carried out and no right of the makers is *injuriously* affected. We therefore conclude that the insertion of the name of the deceased holder as payee was not fatal to a recovery on the note. * * * It is therefore insisted that the blank was not filled in within a reasonable time * * * but where, as in this case, only the name of the payee is left blank, *and both of the joint makers are alive, and the note has never been negotiated so as to cut off defenses, we are unable to perceive how the rights of the makers have been prejudiced by the delay of seven years.*" (Emphasis added.)

No injury to Strealy has been shown in the present case. The argument that Strealy was caused injury by the suit being filed in Dallas County is untenable. In fact, the suit filed in Dallas County was dismissed, and the present cause of action was filed in Tarrant County, Texas, the county of Strealy's residence. The

case was tried to a court and jury in Tarrant County. The jury found the bank guilty of fraud, and that the bank did not act "in the good faith belief that it had the legal right to do so [fill in the words 'Dallas, Texas'] under the laws of the State of Texas."

There was no evidence raising the issue of either fraud or bad faith. Therefore, the bank's motion for an instructed verdict should have been granted. Further, the bank's motion for judgment notwithstanding the jury verdict should have been granted.

Judgment should be here rendered that the bank recovered on the note in accordance with its prayer. That prayer is:

"By delivering to Ray K. Glenn a promissory note with the space for a place of payment left blank, Respondent impliedly authorized Mr. Glenn to fill up the blank space with a place of payment convenient to himself. Under the express provisions of Section 14 of the N.I.L., Petitioner (who stood in Mr. Glenn's shoes) had the right, prima facie at least, to insert 'Dallas, Texas' in the blank space, as it did. If there had been an express agreement between the parties that the note was not to be paid in Dallas, Petitioner's authority would have been limited by such agreement, and it would have been required to fill up the blanks 'strictly in accordance with the authority given'. There was, however, no evidence of such an agreement. On the contrary, the undisputed evidence showed that Respondent had agreed with Petitioner that he would make his payments under the note in Dallas, Texas. Thus, when Petitioner wrote 'Dallas, Texas' in the blank space, it was in full compliance with the law and with the understanding and practice of the parties. The note, therefore, is still in effect, and Petitioner is entitled to its judgment thereon."

Opinion delivered November 1, 1961.