William R. LAWLER, Jr., Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Sharpstown Bank, Appellee.

No. 7784.

Court of Civil Appeals of Texas, Beaumont.

June 10, 1976.

Rehearing Denied July 8, 1976.

Shelton E. Padgett, Houston, for appellant.

Hugh Rice Kelly, Houston, for appellee.

DIES, Chief Justice.

The Federal Deposit Insurance Corporation (F.D.I.C.), receiver of the Sharpstown State Bank, brought suit as plaintiff against William Lawler, Jr., on a promissory note. After a jury trial, judgment was

given the F.D.I.C. from which Lawler perfects this appeal, basically asserting that material alterations were fraudulently made on the note, that he never received proceeds from the loan, and that the fraud perpetrated upon him was by an agent of the Sharpstown State Bank. We affirm the judgment of the lower court.

Lawler's first point of error urges that the court should have granted him a judgment based on the jury's answers to certain issues. These findings were: that the note was incomplete at the time it was signed; that it was completed in an unauthorized manner; and that the subsequent completion was materially different than when signed.

■ The question of alteration of a negotiable instrument is governed by § 3.407 of the Tex.Bus. & Comm.Code Ann. (1968), which provides in relevant part:

"(b) As against any person other than a subsequent holder in due course.

"(1) alteration by the holder *which is both fraudulent and material* discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense." (Emphasis supplied.)

This section makes clear that both elements, fraudulent intent *and* materiality, must be established before discharge from the note is permitted.

■ The jury found in Special Issue No. 2a that the alterations were material, but failed to find in Special Issue No. 2b that there was an intention to defraud Lawler. There was no issue requested or submitted as to who altered the note. This fact is relevant because the comments to § 3.407 of the Tex.Bus. & Comm.Code Ann. (1968) state:

"3. Subsection (2) modifies the very rigorous rule of the original Section 124 [of the Uniform Negotiable Instruments Law]. The changes made are as follows:

"a. A material alteration does not discharge any party unless it is made by the holder. . . .

"b. A material alteration does not discharge any party unless it is made for a fraudulent purpose. . . ."

Subsection (b) is in conformance with the rule that the underlying debt of a note, even if the note itself was unenforceable, remains valid regardless of alterations unless the alterations were made with fraudulent intent. *Republic National Bank of Dallas v. Strealy*, 163 Tex. 36, 350 S.W.2d 914, 919–920 (1961); *Otto v. Halff*, 89 Tex. 384, 34 S.W. 910, 913 (1896); see also *Keller v. Miller*, 207 S.W.2d 684, 689–690 (Tex.Civ. App.—Fort Worth 1947, writ ref'd n. r. e.).

■ It was incumbent upon Lawler to secure a finding of fraud in order to escape the provisions of the note and comply with § 3.407 of the Tex.Bus. & Comm.Code Ann. (1968). This he failed to do, and the evidence supports the jury's conclusion. Lawler's Point of Error No. 1 is overruled. The trial court was correct in refusing him judgment on the defense of alteration.

■ Points of Error Nos. 2 and 3 contend that the evidence conclusively establishes that the changes were made with intent to defraud him and that the jury's failure to so find is against the great weight and preponderance of the evidence. These points direct us to consider the entire record and determine whether there is some evidence to support the jury's finding and whether that finding is not manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

■ In October of 1970, Lawler approached his banker for a line of credit to develop a mobile home park. He was directed to the City Bank and Trust Company in Dallas and, in discussions with its president, Joe P. Novotny, agreed to purchase 455 shares of the stock in this bank for $25,000. This sum was to be raised by promissory notes, one of which was to the Sharpstown State Bank in Houston in the amount of $12,740. Lawler testified that he knew he was signing a promissory note but did not realize that it was to the Sharpstown State Bank. He said that some of the blanks were not completed when he signed the note. The note has "SHARPS-

TOWN STATE BANK, HOUSTON, TEXAS" conspicuously printed on the original document, and it is obvious that this portion of the note could not have been subject to any subsequent alterations. A cursory reading of the instrument by Lawler would have revealed this fact. There were no blanks to be completed in this regard. A party is charged with the obligation of reading what he signs. *Indemnity Ins. Co. v. W. L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553 (1937). And "[t]his rule is but a narrower application of the principle that the party claiming fraud has a duty to use reasonable diligence in protecting his own affairs." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex.1962) see also *Courseview, Incorporated v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957).

Lawler also testified that Novotny told him that the note would be payable in ten years, with interest due only the first five years with both interest and principal due the remaining five years. It is undisputed the note, principal, and interest are payable quarterly within the five year period. Novotny did not testify. Lawler understood that the note was to purchase City Bank and Trust stock with Novotny as trustee. Thus, he was not necessarily to receive cash for the $12,740 note. There is no proof that this transaction was not carried out.

On November 12, 1970, three days after execution of the Sharpstown note, Lawler received a "customer copy" with this letter:

"You have on the above date [November 9, 1970] executed a note payable to Sharpstown State Bank on demand. It is our understanding that you will pay five percent against the principal of the note plus interest each quarter.

"It is our intent that so long as these principal and interest payments are made, that this loan will be carried by us for the five year period necessary for its completed amortization.

Yours very truly,

/S/ Dallas A. Johnson"

At the time of this letter, Johnson was the chief executive officer of the Sharpstown State Bank. He also testified that prior to receiving Lawler's note he had agreed with Novotny that the Sharpstown bank would assist Novotny and others, including Lawler, in the financing of the purchase of a majority of City Bank's stock by a syndicate headed by Novotny. Johnson also stated that he only accepted notes that were completely filled in when they arrived at the bank and that this policy was understood by subordinates at the bank.

Lawler testified at one point that he would probably have bought the City Bank stock even if he had been refused the line of credit (which he was not) which led him to Novotny. The note in question bears five percent interest, which is considerably below the usual rate at that time.

John Patterson, a liquidator for the F.D.I.C., stated that the records reflect that the money was transferred from Sharpstown to City Bank for Lawler's account.

▪ Considering the record as a whole, we are unable to conclude that the jury's failure to find an intention to defraud Lawler is against the great weight and preponderance of the evidence. The jury chose to believe Johnson and Patterson among others and to disregard the testimony of Lawler. The Points of Error Nos. 2 and 3 are without merit and overruled.

▪ Points of Error Nos. 6, 7, and 8 assert that there is no evidence, or that it is against the great weight and preponderance of the evidence, to support the finding that Lawler received the $12,740.

Special Issue No. 3 inquired:

"Do you find from a preponderance of the evidence that William R. Lawler, Jr., did not receive $12,740 from Sharpstown State Bank in connection with the promissory note in question?"

The jury answered: "He did receive $12,-740."

On February 15, 1971, Lawler wrote to the Sharpstown State Bank and attempted to rescind the note with the bank because of the "misrepresentations that have been made to me." But Lawler also enclosed a check in that letter for $159.25 "for interest

on my note dated November 9, 1970, in the amount of $12,740.00." Thus, Lawler certainly understood at this time that he had a note with this particular bank and was making payments thereon. Further, there is no indication at all in the letter that Lawler ever asserted that he did not receive the proceeds, in some form, from the note. It is within the realm of reason to believe that he would not have made such payments had he not obtained such proceeds in some manner. As already noted in this opinion, Lawler realized that the proceeds from the note were to purchase stock in City Bank with Novotny as trustee. The relevant testimony shows:

"Q You are aware that Mr. Novotny was going to hold the stock for you as trustee?

"A Yes, he held it as a trustee.

"Q Now, if Mr. Novotny was going to hold the stock as trustee, what you mean to say is you didn't expect to receive physical delivery of those stock certificates, did you?

\* \* \* \* \* \*

"A No, I did not.

"Q Do you know whether or not Mr. Novotny, as trustee for you, received the shares of stock for the $25,000?

"A No, I don't. He never did notify me.

\* \* \* \* \* \*

"Q If you weren't notified, does that mean it did not happen?

"A I don't know.

"Q So, you can't tell us one way or another whether or not the stock was issued to Mr. Novotny as trustee for you?

"A No, I can't."

There is evidence in the record to support the jury's findings, and Points of Error Nos. 6, 7, and 8 are overruled as being without merit.

By Point of Error No. 10 appellant Lawler contends that the jury's answer to Special Issue No. 4 that Novotny was not an agent of Sharpstown State Bank at the time and on the occasion in question was against the great weight and preponderance of the evidence.

As previously noted herein, Dallas A. Johnson was the chief executive officer of Sharpstown bank at the time the financing arrangement was made with Novotny. He testified that "Mr. Novotny came to me as the representative of a group of people who wanted to buy control in City Bank & Trust in Dallas. Mr. Novotny then represented at all times this group of people."

"Q Did you look upon him as the bank representative?

"A No, sir, he was representing a group of investors.

"Q Was Joe Novotny authorized to make loans on his own?

"A No, sir."

The burden was on Lawler to prove by a preponderance of the evidence that an agency relationship existed between Novotny and the Sharpstown State Bank. *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271 (1944). There must be some act amounting to an appointment of a person as an agent and such a relationship can arise only at the will and by the act of the principal. Without the consensual relationship, no agency can exist. *Green v. Hannon*, 369 S.W.2d 853 (Tex.Civ.App.— Texarkana 1963, writ ref'd n. r. e.).

The evidence and testimony quoted above demonstrates that Sharpstown State Bank did not acquiesce in any such relationship with Novotny. The jury's negative finding on this issue is supported by the record and relevant evidence. Point of Error No. 10 is overruled.

Appellant's remaining points are likewise without merit and overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

STEPHENSON, J., not participating.