**J. E. GREEN, Appellant,**

v.

**George Edward HANNON et al., Appellees.**

**No. 7473.**

Court of Civil Appeals of Texas.

Texarkana.

June 11, 1963.

Rehearing Denied July 16, 1963.

Florence, Garrison & Holt, Gilmer, W. H. Edwards, Mt. Vernon, for appellant.

Roberts & Smith, Longview, Joe N. Chapman, Sulphur Springs, Jones & Jones, Mineola, for appellees.

DAVIS, Justice.

Plaintiff-appellant, J. E. Green, sued defendants-appellees, George Edward Hannon, Mrs. Sam (Mary) Hannon, R. B. Smith, and Leon Cates for specific performance for the transfer of 13 shares of stock in the First State Bank of Hawkins, Texas, and, in the alternative, for damages. Appellant, in his brief, has admitted that this is not a proper case for damages. Appellees filed a motion for summary judgment. A summary judgment was granted. Appellant brings forward only one point of error.

By the point of error appellant takes the position that the court erred in granting the summary judgment because there was some evidence that he had a cause of action as revealed by the pleadings, affidavit, depositions, and the last Joint and Mutual Will of Sam F. Hannon, deceased, and Mary N. Hannon, an appellee herein, that entitled him to a conveyance of the 13 shares of stock in the First State Bank at Hawkins by "Mrs. Sam Hannon and George Edward Hannon".

There are two questions to be decided: (1) Was George Edward Hannon an agent, either actually or implied, of Mrs. Sam (Mary) Hannon? (2) Does appellant have a right to specific performance for the 13 shares of stock?

There are many issues that are necessary to discuss before answering the questions. There are 500 shares of stock in the First State Bank of Hawkins that were owned by about 19 different people. The shares of stock were actually worth about $420.00 per share. Appellant knew that Mrs. Hannon owned 13 shares of stock that were willed to her by her husband who passed away in 1949. He had previously been an employee of the bank. Through some manipulation, he was discharged. He owned 153 shares of stock in the bank. Apparently several of his friends owned some shares of stock, and he was expressly interested in acquiring the 13 shares of stock from Mrs. Hannon.

Sam F. Hannon, deceased, and Mrs. Sam (Mary) Hannon, had two children; viz., a son, George Edward Hannon, and a daughter, Lou Hannon.

Sam F. Hannon, deceased, and Mary Hannon, in their Joint and Mutual Will, named their son, George Edward Hannon, as Independent Executor. After the death of Sam F. Hannon, the Will was probated. Appellee, George Edward Hannon, qualified as Independent Executor in 1949. There is no record that the independent administration had ever been closed, or ceased to exist. Prior to 1955, the courts had no power to close an independent administration, such as was involved in this case, and the holdings were to the effect that the independent administration terminated when the estate was fully administered; or, when the claims were paid and a distribution of the remainder of the estate had been completed. Lumpkin v. Smith, 62 Tex. 249; Rowland v. Moore, 141 Tex. 469, 174 S.W. 2d 248; Hunt v. Seeley, 5 Cir., 115 F.2d 205. The courts have also held that it was a condition precedent to a final distribution

that the executor filed a final account. City National Bank of San Saba v. Penn, Tex. Civ.App., 92 S.W.2d 532, N.W.H. Also, see 33 T.L.R. 115, "Power to Close the Administration". It seems that the estate had been fully administered. Nevertheless, the stocks were still in the name of Sam F. Hannon. Title to the stock was vested in appellee, Mrs. Hannon. The only right that could have been left with the Independent Executor, as to the 13 shares of stock, was to transfer the stock to the person lawfully entitled to same.

In 1955, the Legislature enacted a statute, Sec. 151, V.A.T.S., Probate Code, that provides a method of closing an administration by affidavit. This case has to be decided by the law prior to the enactment of the statute.

█ Appellee, George Edward Hannon, was employed in Dallas on May 7, 1962. On that day, appellant, in company with Dr. Peterson, made a trip to Dallas. W. A. Pounds was in Dallas attending a bankers' convention. Appellant and Dr. Peterson got in touch with Pounds, and all three of them went to see the appellee, George Edward Hannon, for the purpose of buying the 13 shares of stock. They had a conversation with appellee, George Edward Hannon, and the appellant made him an offer of $10,000.00 for the 13 shares of stock, about $793.23 per share; nearly double the actual value. Apparently, appellant was trying to buy the stock from the appellee, George Edward Hannon, on the theory that he was Independent Executor of the estate of his father. The following day, May 8, 1962, appellee, George Edward Hannon, went to Hawkins to talk to his mother about the sale of the 13 shares of stock. There is testimony in the record that he called appellant on the telephone and told him that the appellee, Mrs. Hannon, would let him have the stock. There is also testimony that appellant then called appellee, George Edward Hannon, on the telephone, and that appellee, George Edward Hannon, told the appellant that his mother did not want to let him have the stock. Such evidence would be inadmissible against appellee, Mrs. Hannon, for the purpose of showing a contract of sale, or agency, or for specific performance. Appellant had not talked to appellee, Mrs. Hannon, about buying the stock. Appellant testified, by deposition, as follows:

"Q. I see. Then, what else was said?

"A. I told him, I know that I have got to pay a premium if I get possession of it.' He said, 'What will you give.' I said, 'George, I will give you ten thousand dollars.' I said, 'George, it is pretty rough, I will give you ten thousand dollars.'

"Q. What?

"A. Pretty rough. He studied a few minutes and said, 'We will accept it under these terms', said, 'I will go talk to my mother and she is agreeable to it, and which it is agreeable to me, I won't tell anybody, I won't get out and try to peddle or nothing,' that is about all he said. After he said that, that is about all of the conversation. He came down to Hawkins the next day.

"Q. He told you if his mother wanted to sell it he would see about it?

"A. No, he didn't say that. He said they would accept it *if it was o. k. with his mother.*

\*   \*   \*   \*   \*   \*

"Q. That wasn't my question. Did he tell you he had the power to sell it?

"A. *I don't recall,* but I think he did, *if it was o. k. with her. Said he didn't want to go against her will.*" (Emphasis added)

All the other witnesses corroborated this testimony.

Appellant takes the position that the appellee, George Edward Hannon, was actually the agent of appellee, Mrs. Hannon, or at least he was an implied agent. An agency is founded on the express or implied contract of the parties, or else created by law. An express agent is usually created by a legal written contract. An implied agent is created by oral contract, or denotes a consensual relation existing between the two persons. In the absence of such contract or relations, no agency exists. 2 T.J. 436, Sec. 1; 2 T.J.2d 446, Sec. 11; 2 C.J.S. Agency § 1, p. 1023; and 2 C.J.S. Agency § 114b(1), p. 1314; 3 Am. Jur.2d 637, Sec. 274.

The sale of the 13 shares of stock was not a transaction between the buyer and the seller, nor was it one involving the relation of a principal and an agent. There was actually no sale. 2 T.J.2d 441, Sec. 7.

Appellant plead that he had made a contract to purchase the 13 shares of stock from the appellee, George Edward Hannon. He proved the contract, but he made no proof of agency, and the proof shows that appellee, Mrs. Hannon, owned the stock. There is no evidence that would prove a contract between the appellant, as buyer, that would require the appellee, Mrs. Hannon, the owner, or the other defendants, to convey the 13 shares of stock to the appellant. 38 T.J. 574, Secs. 126 through 132; 49 Am.Jur. 146, Sec. 125; 81 C.J.S. Specific Performance §§ 65 through 71, pp. 568–580.

Equity generally refuses to order specific performance of a contract relating to personal property. Although a suit against a stockholder may be secured by specific performance for the sale of corporate stock, where such stock is not readily available on the open market. 38 T.J. 532, 533, Secs. 83 and 84.

According to the pleadings and the evidence, this is a proper case for summary judgment. Rule 166–A, V.A.T. Rules of Civil Procedure, and authorities cited thereunder. The judgment of the trial court is affirmed.