IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-415-CV





ARTHUR D. STONE,



 APPELLANT



vs.




CONTINENTAL CARS, INC.,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT 



NO. 92-00416, HONORABLE JERRY DELLANA, JUDGE PRESIDING 


 





PER CURIAM


 Appellant Arthur D. Stone sued appellee Continental Cars, Inc. (Continental Cars)
to recover damages for breach of a vehicle service contract Stone purchased in connection with
a car he had bought from appellee Continental Cars. The vehicle service contract was obtained
through Republic Industries Inc. (1) (Republic Industries), which Stone alleged had actual or
apparent authority to issue the contract on behalf of Continental Cars and to bind Continental Cars
as the principal on the service contract. Alternatively, Stone pled that he had been confused as
to the affiliation, sponsorship, or approval of the service contract obtained through Republic
Industries, as well as to the affiliation between Republic Industries and Continental Cars, and
therefore was entitled to recover damages under section 17.50 of the Deceptive Trade Practices
Act. Tex. Bus. & Com. Code Ann. § 17.50(c) (West 1987 & Supp. 1994) (the DTPA). The trial
court, hearing the case without a jury, rendered a take-nothing judgment and in addition awarded
$7,500 in attorney's fees to Continental Cars as a sanction against Stone for filing a frivolous
lawsuit. Stone appeals from the trial court judgment, bringing two points of error. We will
sustain both points of error and reverse the trial court's judgment.



BACKGROUND


 In December 1985, Stone bought a used Mercedes and a two-year service contract
that covered repairs on the vehicle from Continental Cars. In December of 1987, Stone renewed
the service contract for an additional two-year period. Finally, in December of 1989, Stone
renewed the service contract for a one-year period. The original service contract and the two
renewal contracts were identical. Each contract identified Continental Cars as the "issuing dealer"
and Republic Industries as the "administrator." Each provided that the contract was a service
contract between the contractholder, Stone, and the issuing dealer, Continental Cars.

 Continental Cars made repairs that were covered by the warranty during both the
period of the original service contract and the first renewal contract. However, in March of 1990,
when Stone had his car towed to Continental Cars for repairs, he was told that Continental Cars
would not honor the second renewal contract because Continental Cars had not authorized its
issuance. The undisputed evidence is that Stone dealt exclusively with Republic Industries when
he entered into the second renewal contract. 



ACTUAL AND APPARENT AUTHORITY


 In his first point of error, Stone argues that the trial court's finding that Republic
Industries had no actual or apparent authority to issue the renewal service contract on behalf of
Continental Cars was erroneous as a matter of law. We will first consider whether Republic
Industries had actual authority to renew a sales contract with Continental Cars' customers after
September 1989. 

 Republic Industries and Continental Cars executed an enforceable contract on April
14, 1987. (2) Under the terms of that contract, Republic Industries agreed to secure a financially
qualified and state approved insurance company which would indemnify Continental Cars from
losses incurred as a result of valid claims made under the service plans sold by Continental Cars. 
In addition, the contract gave Republic Industries the right to contact Continental Cars' customers
directly to renew the service contract on Continental Cars' behalf as part of a "Pursuit Program." 
To participate in the Pursuit Program, Continental Cars was required to register a certificate of
doing business in the state of California and to allow Republic Industries to retain a $65
processing fee from the profits that Republic Industries generated from direct sales. In turn, if
Republic Industries renewed the service contract directly, Republic Industries was to remit to
Continental Cars $300 for the renewal of a new car service agreement and $200 for the renewal
of a used car service agreement. The contract further provided that either party could terminate
the agreement upon written notice to the other party.

 The question, then, is whether the record supports the trial court's conclusion that
no agency relationship existed between Continental Cars and Republic Industries after September
1989. Agency is a contractual relationship between the principal and the agent, and can be
express or implied. Green v. Hannon, 369 S.W.2d 853 (Tex. Civ. App.--Texarkana 1980, writ
ref'd n.r.e.). An agent is one who is authorized to conduct some business or manage some affair
on the principal's behalf and to render an account of it. Boyd v. Eikenberry, 122 S.W.2d 1045
(Tex. 1939). The question of whether an agency relationship exists is a question of law. See
State v. Keeton Packing Co., 487 S.W.2d 775 (Tex. Civ. App.--Amarillo 1972, writ ref'd n.r.e.);
Minneapolis-Moline Co. v. Purser, 361 S.W.2d 239 (Tex. Civ. App.--Dallas 1962, writ ref'd
n.r.e.); Somerville v. Smith, 200 S.W.2d 242 (Tex. Civ. App.--Fort Worth 1946, no writ). 
Manifestly, the 1987 contract created an agency relationship between Continental Cars and
Republic Industries because the contract expressly gave Republic Industries the right to contact
Continental Cars' customers on Continental Cars' behalf. The purpose of the Pursuit Program
was to solicit customers for Continental Cars, and, under the contract, the only reason for
Continental Cars to register as a foreign corporation doing business in California was to permit
Republic Industries to renew the service contracts on Continental Cars' behalf from California.

 Since the contract between Continental Cars and Republic Industries created a valid
agency relationship, in order to conclude that no agency relationship existed after September 1989
the trial court must have determined that the contract had terminated. In its findings of fact and
conclusions of law, the trial court did not specifically find that the contract between Republic
Industries and Continental Cars had been terminated. Instead, the court found that "Continental
Cars stopped doing business with Republic Industries, Inc. in September 1989," which is not
tantamount to a finding that the underlying contract had been terminated. However, under Tex.
R. Civ. P. 299, we may presume that the court found that the contract had been terminated since
that finding is necessary to support the judgment and had not been offered to and rejected by the
court.

 The record reflects only two possible means by which the contract could have been
terminated. First, Continental Cars claimed that the contract had been terminated by Republic
Industries through a letter written on September 25, 1989. But the letter from Republic
Industries, rather than terminating the relationship, indicated that Republic Industries expected
their contractual relationship to continue. The letter stated that Republic Industries had been
contacted by the insurance company who underwrote the service plans because the insurance
company was concerned that Continental Cars was not selling a sufficient volume of plans to build
up a reserve structure. In the last paragraph, Republic Industries stated:



[W]e ask that you increase the volume of your used car service plan business . . .
so that an adequate reserve can be established for [the] dealership. Your
cooperation in this regard is most important and will certainly be appreciated by
us and our underwriter.



The letter of September 25 clearly anticipated future dealings between the parties and did not
constitute notice of termination.

 Second, some testimony in the record suggests that Continental Cars attempted to
orally terminate the contract. Bryan Hardeman, president of Continental Cars, testified that
Republic Industries had also written Continental Cars in the fall of 1988 to exhort Continental
Cars to write more service contracts. Hardeman continued:



We hadn't been writing for over a year with them and this was a termination letter
in my view because I spoke with the representative of the local representative of
that, and tried to do what he could to keep our business and at that point I just
said no, we're not writing any more and agreement was terminated. [sic]



It is unclear whether Hardeman spoke to Republic Industries' representative at the time he
received the 1988 letter or at the time he received the 1989 letter. It is also unclear whether
Hardeman advised Republic Industries' representative that Continental Cars would not write any
more service agreements for Republic Industries or whether Hardeman "just said no" upon receipt
of the 1989 letter. But, even if Hardeman attempted to unilaterally cancel the contract without
the written notice that the contract required, that attempt failed.

 In general, a contracting party must strictly comply with contractual specifications
regarding the manner in which the contract may be terminated. Stretcher v. Green, 542 S.W.2d
954, 957 (Tex. Civ. App.--Texarkana 1976, no writ) (oral cancellation ineffective when contract
required written cancellation); G.C. Murphy Co. v. Lack, 404 S.W.2d 853 (Tex. Civ.
App.--Corpus Christi 1966, writ ref'd n.r.e.) (when contract required 30 days' notice and an
opportunity to cure a default, 25 days' notice with no opportunity to cure was insufficient to effect
a forfeiture); Barron G. Collier, Inc. v. Davison-Levin, Inc., 294 S.W. 223 (Tex. Civ.
App.--Dallas 1927, writ dism'd) (oral cancellation ineffective when contract required written
cancellation).

 However, parties to a written contract may orally agree to modify terms of that
contract and act in accordance with the oral agreement. In Barron G. Collier, Inc., a Court of
Civil Appeals considered whether an advertising contract that provided that either party could
cancel the contract after one year upon 90 days written notice had been canceled orally. Levin
claimed that the contract had been canceled orally by an agent of Barron G. Collier, Inc. who was
vested with the apparent authority to waive the requirement of written cancellation. Levin
testified that the agent had entered his shop to discuss changing the advertising notices. Levin
further testified:



I told him I was going to discontinue when my year was up; I didn't care to spend
any more money, and I was going to discontinue my contract after a year. He
argued with me to keep going, and I told him I could not afford to spend that kind
of money . . . and I told him to cancel it and notified him. He said all right and
walked out. Naturally it left me with the impression that the house would cancel
it.



Id. at 224. The appeals court found that "[a]t most this testimony can only be considered as a
warning that appellant could expect within the 90 days time written notice from appellee that it
would exercise its right of cancellation." Id. 

 In this case, Hardeman's testimony is even less convincing, since it doesn't appear
that a representative of Republic Industries assented to his decision. Hardeman did not suggest
that the two parties agreed to vary the terms of the contract; the best reading of Hardeman's
testimony is that he unilaterally determined not to write more contracts through Republic. There
was no evidence that Republic Industries acquiesced in that decision. In fact, Republic Industries'
subsequent acts suggest that it believed that the contract was still effective.

 In deciding a legal sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O.R.R. v
Burden, 203 S.W.2d 522, 528-31 (Tex. 1947). See generally William Powers, Jr. & Jack Ratliff,
Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515, 523 (1991);
Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974).

 Here, the 1987 contract established an agency relationship between Republic
Industries and Continental Cars expressly authorizing Republic Industries to renew service
contracts on Continental Cars' behalf. Since there is no evidence of written notice of cancellation,
or of an oral agreement modifying the requirement for written notice and subsequent oral
cancellation, we hold that Republic Industries retained actual and express written authority to
renew service contracts on behalf of Continental Cars. Because we so hold, we need not address
the claim of apparent authority.

 Continental Cars also argues that the vehicle service contract was ineffective
because Republic Industries neither notified Continental Cars of the sale of the contract nor
remitted to Continental Cars the portion of the proceeds to which it was entitled. The trial court
agreed, concluding that "[b]ased on the absence of any consideration and the absence of any
agency relationship, the contract between Republic Industries and Arthur Stone was not binding
upon Continental Cars." Stone had paid Republic Industries directly through charges on his credit
card. As the analysis above indicates, the renewal was supported by consideration because Stone
remitted the monies directly to Republic Industries, Continental Cars' agent under the 1987
contract. As Continental Cars' agent for the purpose of renewals, Republic Industries had the
duty to remit the funds to Continental Cars. The fact that Republic Industries did not discharge
its obligation to Continental Cars does not void the service contract issued to Stone, but rather
gives Continental Cars a cause of action against Republic Industries. See Searle-Taylor Mach.
Inc. v. Brown Oil Tools, Inc., 512 S.W.2d 335 (Tex. Civ. App.--Houston [1st Dist.] 1974, writ
ref'd n.r.e.) (company which was authorized to sell machinery on behalf of another company and
to collect proceeds of sale for other company's benefit had duty to notify company for which it
was acting of its collection from sale and to remit the proceeds within a reasonable period of
time).

 The risk of loss between the parties to this lawsuit is allocated by the two contracts
involved. The underlying 1987 contract between Republic Industries and Continental Cars
required Republic Industries to provide an insurance policy that would indemnify Continental Cars
from losses incurred as a result of valid claims made under the service plans that Continental Cars
sold. Correspondingly, the service contract issued to Stone was not an insurance policy, but
rather a service contract between Stone and Continental Cars. Under the terms of the service
contract, Continental Cars promised to repair, replace, or reimburse Stone for the reasonable
costs to repair or replace any of the covered components. The service contract specifically
provided that Republic Industries, the administrator, was liable only to Continental Cars, the
contractor. In sum, under the terms of the two contracts, Stone is only responsible for the
deductible and any repairs that are not covered by the service contract, and Continental Cars must
look to Republic Industries for payment of the reasonable costs that exceed the deductible. 
Consequently, we hold that Continental Cars bears the risk of loss in the event that Republic
Industries will not pay. We sustain Stone's first point of error.



ATTORNEY'S FEES


 In his second point of error, Stone complains that the trial court abused its
discretion by assessing sanctions against him for filing a frivolous lawsuit. The trial court ordered
Stone to pay Continental Cars attorney's fees of $7,500 on the basis that Stone had filed a
frivolous suit. The trial court's award was based on both Rule 13 of the Texas Rules of Civil
Procedure and § 17.50 of the Deceptive Trade Practices Act. A necessary element for an award
of attorney's fees under either section 17.50 or Rule 13 is that the suit is groundless. See Tex.
R. Civ. P. 13; Tex. Bus. & Com. Code Ann. § 17.50(c) (West 1987 & Supp. 1994). In this case,
Stone proved facts that not only credibly raised the issue of Republic Industries' agency but
established agency as a matter of law. Therefore, we sustain Stone's second point of error.



CONCLUSION


 For the above reasons, the judgment of the trial court is reversed and the cause is
remanded for a determination of Stone's damages and rendition of judgment in accordance with
this opinion.


Before Justices Jones, Kidd and B. A. Smith

Reversed and Remanded

Filed: December 7, 1994

Do Not Publish
1.   Republic Industries, Inc. is not a party to this appeal and was not a party below. 
The record suggests that Republic Industries, Inc. filed a petition in bankruptcy.
2.   The validity of the 1987 contract was not challenged in this proceeding.